*366 Opinion
BAXTER, J.
Depending on the theory of recovery, a lawsuit alleging a latent defect in the construction of an improvement to real property must be brought within three or four years after the plaintiff discovers the defect, or should have done so. (See Code Civ. Proc., §§ 337, subd. 1, 338, subds. (b), (c); Regents of University of California v. Hartford Acc. & Indem. Co. (1978) 21 Cal.3d 624, 630 [147 Cal.Rptr. 486, 581 P.2d 197] (Regents).)[1] However, a 1971 statute established a further general rule that no action for latent construction defects may be commenced more than 10 years after “substantial completion” of the construction project. (§ 337.15, as enacted by Stats. 1971, ch. 1569, § 1, p. 3149.)[2] This “absolute” 10-year limitations period applies regardless of when the defect was discovered. (Regents, supra, at p. 631.)
Pre-1971 cases held that the discovery-based limitations period for a latent-defect suit alleging breach of an express or implied warranty is “tolled”—that is, halted and suspended in progress—while the defendant’s promises or attempts to honor the warranty by repairing the defect are pending. Relying heavily on these earlier authorities, and in suits not confined to warranty theories, two Court of Appeal cases concluded that the alternate 10-year statute of limitations of section 337.15 is also subject to tolling for repairs. (Grange Debris Box & Wrecking Co. v. Superior Court (1993) 16 Cal.App.4th 1349 [20 Cal.Rptr.2d 515] (Grange Debris); Cascade Gardens Homeowners Assn. v. McKellar & Associates (1987) 194 Cal.App.3d 1252 [240 Cal.Rptr. 113] (Cascade Gardens).) A more recent Court of Appeal decision disagreed. (FNB Mortgage Corp. v. Pacific General Group (1999) 76 Cal.App.4th 1116 [90 Cal.Rptr.2d 841] (FNB Mortgage).)
Here the trial court sustained a demurrer without leave to amend and dismissed the action, concluding that the 10-year limitations period could not be extended by a defendant’s promises or attempts to repair. The Court of Appeal reversed this judgment. The appellate court held that section 337.15 is subject both to equitable tolling during periods of repair and to equitable estoppel if defendants engaged in conduct that delayed the filing of suit. We granted review to resolve the extent to which the doctrines of equitable *367 tolling and equitable estoppel should apply to the 10-year statute of limitations set forth in section 337.15.
We agree with FNB Mortgage, supra, 76 Cal.App.4th 1116, that section 337.15’s 10-year statute of limitations for latent construction defects is not subject to a general rule of equitable tolling while promises or attempts to repair are pending. A broad tolling-for-repairs rule would contravene the Legislature’s clear intent, at the time it adopted section 337.15, to ensure a generous but firm cutoff date for latent-defect suits. Moreover, the extraordinary length of the limitations period set forth in section 337.15 weighs strongly against the need for such a tolling mle as a matter of fair procedure.
Though we thus find no basis for equitable tolling during any period in which the defendant’s promises or efforts to repair are pending, we do not foreclose application of the distinct doctrine of equitable estoppel. A defendant whose conduct induced plaintiffs to refrain from filing suit within the 10-year period might be equitably estopped to assert that the statute of limitations had expired. However, plaintiffs’ first amended complaint alleges no facts sufficient to establish such an estoppel, and we find no basis upon which to allow a further opportunity to amend.
We will therefore reverse the Court of Appeal’s judgment. We will also disapprove the Grange Debris and Cascade Gardens decisions insofar as they conflict with the views expressed in this opinion.
FACTS
Plaintiffs filed their original complaint on August 5, 1999, and a first amended complaint on December 3, 1999, asserting both individual and class claims. The first amended complaint alleged as follows:
The Eagles Ridge project is a 450-unit development of single-family homes in Antioch. Defendants—Centex Homes and related entities (collectively Centex), American Consolidated Industries, Inc., and numerous Does— variously designed, developed, built, and/or sold the Eagles Ridge homes, or designed, manufactured, sold, and/or installed the windows. The four individual plaintiffs, whose claims typify those of the other class members, are homeowners within the development who bought their houses directly from defendants. The Eagles Ridge homes suffer from design or manufacturing defects, including leaks in the windows and window systems, that have caused damage to each of the individual residences. These defects were discovered within three years before the lawsuit was filed. They may have developed earlier, but could not have been discovered sooner with reasonable diligence. “[A]s problems resulting from unknown defects were discovered,” *368 defendants represented to plaintiffs that they would correct all problems, were experts in the construction field, and would take the steps required to ensure the quality and integrity of the residences. “[A]t various times [defendants have attempted to make repairs ... or advised plaintiffs that the . . . windows were not defective and not to file a lawsuit.” Despite their promises and attempts to repair, defendants “have not properly completed[,] reconstructed, repaired and/or restored the windows, interior waterproofing systems, and walls associated therewith.” By their conduct, defendants are estopped to assert that the statute of limitations has expired. Damages are recoverable on theories of implied warranty, strict liability, and negligence.
Defendants demurred on two grounds. They urged the entire action was barred by section 337.15’s 10-year limitations period for latent construction defects. They also insisted the complaint’s class allegations were insufficient. In support of their statute of limitations argument, defendants asked the court to take judicial notice that the Notices of Completion on the four homes owned by the individual plaintiffs were recorded in November 1988, some 10 years and 9 months before plaintiffs filed their original complaint.
In response, plaintiffs urged that the first amended complaint properly pled a class action. With respect to the statute of limitations, plaintiffs argued that the complaint sufficiently alleged both equitable tolling for repairs and equitable estoppel to assert the statute by virtue of defendants’ conduct that forestalled a timely lawsuit.
On April 24, 2000, the trial court filed its “Order After Hearing on Demurrer.” The order sustained the demurrer without leave to amend on grounds that the action was barred by the statute of limitations. The order reasoned: The parties “appear to agree” that, unless “tolled” for about nine months, section 337.15’s 10-year limitations period had expired before the complaint was filed.[3] For two reasons, the allegations of the complaint are not specific enough to establish a repairs-based “estoppel.” First, plaintiffs allege in the alternative that defendants either promised and attempted to repair or denied the defects and made demands not to sue; the latter conduct is insufficient to create an “estoppel.” Second, by alleging simply that repairs were attempted “at various times,” plaintiffs leave open the possibility this conduct occurred after November 1998 (when the statute of limitations expired unless tolled), and thus was not timely to create a “tolling.” Amendments might cure these factual deficiencies, but amendment would be futile here, because section 337.15 is a “statute of repose,” and thus is not subject to “equitable tolling” for repairs.
*369 Plaintiffs appealed, and the Court óf Appeal reversed. Unlike the trial court, the Court of Appeal agreed with those decisions (Grange Debris, supra, 16 Cal.App.4th 1349; Cascade Gardens, supra, 194 Cal.App.3d 1252) that extended equitable tolling for repairs to section 337.15, and rejected the contrary reasoning of FNB Mortgage, supra, 76 Cal.App.4th 1116. Moreover, the Court of Appeal concluded, just as section 337.15 is subject to equitable tolling, the statute also is not immune from equitable estoppel. The Court of Appeal ruled that plaintiffs had pled grounds for an equitable estoppel, sufficient to survive demurrer, by alleging that defendants’ repeated promises to repair had caused them to delay filing suit.
We granted Centex’s petition for review.[4] We now conclude that the Court of Appeal’s judgment must be reversed.
DISCUSSION
1. Equitable tolling.
Section 337.15, enacted in 1971, provides generally that “[n]o action may be brought” against those involved in the design, supervision, or construction of an improvement to real property, or their sureties, for latent defects in the design or construction, or for injury to property caused by such defects, unless the suit is filed within 10 years after “substantial completion” of the project. (Id., subd. (a).) The 10-year period begins to run no later than “[t]he date of recordation of a valid notice of completion.” (Id., subd. (g)(2).) Section 337.15 “shall [not] be construed as extending the period prescribed by the laws of this state for bringing any action.” (Id., subd. (d).)
As we explained in Regents, supra, 21 Cal.3d 624, a suit to recover for a construction defect generally is subject to limitations periods of three or four years, depending on whether the theory is breach of warranty (§ 337, subd. 1 [four years: “action upon any contract, obligation or liability founded upon an instrument in writing”]) or tortious injury to property (§ 338, subds. (b), (c) (formerly subds. 2, 3) [three years: trespass or injury to real or personal property]). However, these periods begin to run only when the defect would be discoverable by reasonable inspection. (Regents, supra, at p. 630.) On the other hand, “section 337.15 . . . imposed an absolute requirement that a suit . . . to recover damages for a [latent] construction defect be brought within 10 years of the date of substantial completion of construction, regardless of the date of discovery of the defect.” (Regents, supra, at p. 631, fn. omitted.) “The *370 interplay between these statutes sets up a two-step process: (1) actions for a latent defect must be filed within three years ... or four years ... of discovery, but (2) in any event must be filed within ten years ... of substantial completion.” (North Coast Business Park v. Nielsen Construction Co. (1993) 17 Cal.App.4th 22, 27 [21 Cal.Rptr.2d 104].)
Section 337.15 states several situations in which the 10-year limit shall not apply (see text discussion, post), but it contains no provision for extension of the limitations period during periods of repair. Nonetheless, plaintiffs urge that the statute is subject to “equitable tolling” while the defendant’s promises or attempts to remedy a defect are pending.
Equitable tolling is a judge-made doctrine “which operates independently of the literal wording of the Code of Civil Procedure” to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness. (Addison v. State of California (1978) 21 Cal.3d 313, 318-319 [146 Cal.Rptr. 224, 578 P.2d 941] (Addison); see also Bollinger v. National Fire Ins. Co. (1944) 25 Cal.2d 399, 411 [154 P.2d 399] (Bollinger).) This court has applied equitable tolling in carefully considered situations to prevent the unjust technical forfeiture of causes of action, where the defendant would suffer no prejudice. (E.g., Lambert v. Commonwealth Land Title Ins. Co. (1991) 53 Cal.3d 1072, 1080 [282 Cal.Rptr. 445, 811 P.2d 737] (Lambert) [claim against title insurer accrues upon insurer’s refusal to defend title, but two-year limitations period is equitably tolled until underlying title action is resolved]; Prudential-LMI Com. Insurance v. Superior Court (1990) 51 Cal.3d 674, 687-693 [274 Cal.Rptr. 387, 798 P.2d 1230] (Prudential-LMI) [one-year period to sue on casualty insurance policy begins upon “inception of the loss,” but is equitably tolled from timely notice of loss until insurer denies claim]; Addison, supra, at pp. 317-321 [six-month period for state court suit against public agency was equitably tolled during plaintiffs’ timely federal suit raising both federal and state claims]; Elkins v. Derby (1974) 12 Cal.3d 410, 414-420 [115 Cal.Rptr. 641, 525 P.2d 81] (Elkins) [one-year period for personal injury action was tolled while plaintiff, acting in good faith, pursued workers’ compensation remedy against defendant]; Bollinger, supra, at pp. 410-412 [15-month period to sue on fire insurance policy was tolled while timely prior action, erroneously dismissed as premature, was pending].)
As these cases illustrate, the effect of equitable tolling is that the limitations period stops running during the tolling event, and begins to run again only when the tolling event has concluded. As a consequence, the tolled interval, no matter when it took place, is tacked onto the end of the *371 limitations period, thus extending the deadline for suit by the entire length of time during which the tolling event previously occurred.[5]
The Legislature may preclude equitable tolling by stating its intention “to disallow tolling under any circumstances not enumerated in the statute.” (Laird v. Blacker (1992) 2 Cal.4th 606, 618 [7 Cal.Rptr.2d 550, 828 P.2d 691] (Laird) [attorney malpractice limitations statute (§ 340.6) providing that limitations period shall “in no event” be tolled except as specified (id., subd. (a))]; see also, e.g., Battuello v. Battuello (1998) 64 Cal.App.4th 842, 847 [75 Cal.Rptr.2d 548] (Battuello) [special one-year limitations statute (§ 366.2) for surviving action against deceased person, providing that period “shall not be tolled or extended for any reason” except as specified (id., subd. (b))].)
Moreover, equitable tolling should not apply if it is “inconsistent with the text of the relevant statute” (United States v. Beggerly (1998) 524 U.S. 38, 48 [141 L.Ed.2d 32, 118 S.Ct. 1862] [quiet title action must commence within 12 years after discovery of government’s title claim; generous limitations period, beginning only upon discovery, already provides for equitable tolling, and further tolling not warranted]; see also Lampf v. Gilbertson (1991) 501 U.S. 350, 363 [115 L.Ed.2d 321, 111 S.Ct. 2773] [where federal securities fraud action was subject to limitations of one year from discovery, or three years from violation, three-year period was “outside” limit not subject to tolling]) or contravenes clear legislative policy (cf. Abreu v. Svenhard’s Swedish Bakery (1989) 208 Cal.App.3d 1446, 1456 [257 Cal.Rptr. 26] [equitable tolling would violate policy of uniform federal statute of limitations for suits claiming violations of labor contracts]).
“As with other general equitable principles, application of the equitable tolling doctrine requires a balancing of the injustice to the plaintiff occasioned by the bar of his claim against the effect upon the important public interest or policy expressed by the . . . limitations statute.” (Addison, supra, 21 Cal.3d 313, 321.)
*372 Plaintiffs insist that in construction defect cases, the rule of tolling for repairs is well established. As they observe, two Court of Appeal decisions, Grange Debris, supra, 16 Cal.App.4th 1349, 1360, and Cascade Gardens, supra, 194 Cal.App.3d 1252, 1256-1258, have concluded that the 10-year limitations period of section 337.15 is tolled while the defendant’s promises or attempts to remedy the defect are pending. For this holding, Grange Debris relied solely on Cascade Gardens. Cascade Gardens, in turn, invoked the “clear authority” of several earlier decisions, Aced v. Hobbs-Sesack Plumbing Co. (1961) 55 Cal.2d 573, 585 [12 Cal.Rptr. 257, 360 P.2d 897] (Aced), Mack v. Hugh W. Comstock Associates (1964) 225 Cal.App.2d 583, 589 [37 Cal.Rptr. 466] (Mack), and Southern Cal. Enterprises v. Walter & Co. (1947) 78 Cal.App.2d 750, 755 [178 P.2d 785] (Southern Cal. Enterprises). (Cascade Gardens, supra, at p. 1256.)
But Aced, Mack, and Southern Cal. Enterprises are inapposite to the question before us. They predate the 1971 adoption of section 337.15, and were narrowly concerned with how to apply the limitations period for express or implied warranties. These cases simply confirmed that the statute of limitations for breach of warranty does not begin to run until discovery of the defect, and is thereafter tolled during periods the warrantor claims he can honor the warranty by repairing the defect, and attempts to do so. (Aced, supra, 55 Cal.2d 573, 577, 585 [radiant heating system; plaintiff stipulated he was relying solely on a theory of implied warranty]; Mack, supra, 225 Cal.App.2d 583, 585, 589 [radiant heating system; plaintiff alleged breach of express warranty]; Southern Cal. Enterprises, supra, 78 Cal.App.2d 750, 752-753, 755 [installed carpet; plaintiff alleged breach of express warranty].)
Aced, Mack, and Southern Cal. Enterprises did not consider how tolling should apply to an alternative, overarching limitations period later enacted specifically for suits alleging defects in the construction of improvements to real property—a limitations period measured, regardless of discovery, from the date the work of construction was completed. Contrary to the assumption of Cascade Gardens, supra, 194 Cal.App.3d 1252, those earlier cases are not persuasive authority for extending a “tolling for repairs” rule to section 337.15.[6]
*373 In FNB Mortgage, supra, 76 Cal.App.4th 1116, the Court of Appeal properly discounted the pre-1971 precedents, rejected the holding of Cascade Gardens, and concluded that the 10-year limitations period of section 337.15 is not equitably tolled for repairs. FNB Mortgage reached the correct result.[7]
At the outset, the plain language of section 337.15 suggests that the 10-year limitations period is not subject to extension for reasons not stated in the statute itself. Unlike subdivision (a) of section 340.6, the attorney malpractice limitations statute (see Laird, supra, 2 Cal.4th 606, 618; see also, e.g., §§ 340.5 [malpractice by health care provider], 366.2, subd. (b) [surviving action against deceased person]), section 337.15 does not ban nonstatutory tolling in so many literal words. But the structure and tone of section 337.15 do differ markedly from garden-variety California limitations statutes. The latter simply provide the various “periods prescribed for the commencement of [specified] actions.” (§ 335; see also, e.g., §§ 336, 336a, 337, 337.5, 338, 339, 341.) By contrast, section 337.15 declares, in stentorian terms, that “[n]o action [for latent construction defects] may be brought . . . more than 10 years after the substantial completion of the development or improvement.” (Id., subd. (a), italics added.)
Section 337.15 itself provides several clear exemptions from the 10-year limit. The limit does not apply to actions for personal injury. (§ 337.15, subd. (a)(1), (2); cf. § 337.1, subd. (a)(3) [four-year limitation period for patent construction defects].) It does not apply to suits based on “willful misconduct or fraudulent concealment.” (§ 337.15, subd. (f); cf. §§ 340.5, 340.6, subd. (a) [both permitting “tolling” for “fraud” or “intentional concealment”].) It does not apply to a cross-complaint for indemnity by one participant in the project against another, if the cross-complainant himself was sued directly within the 10-year period. (§ 337.15, subd. (c); Valley Circle Estates v. VTN Consolidated, Inc. (1983) 33 Cal.3d 604, 608-615 [189 Cal.Rptr. 871, 659 P.2d 1160] (Valley Circle Estates).) It cannot be asserted by “any person in actual possession or . . . control ... of [the] improvement ... at the time any deficiency [therein] constitutes the proximate cause” of the damage for which recovery is sought. (§ 337.15, subd. (e).) An argument thus arises, under the maxim inclusio unius est exclusio alterius, that the Legislature intended to omit other exceptions.
*374 But if doubt remains from the language of section 337.15, it is dispelled by reference to the well-known goal of this special limitations statute. “[T]he purpose of section 337.15 is to protect contractors and other professionals and tradespeople in the construction industry from perpetual exposure to liability for their work. (Regents[, supra,] 21 Cal.3d 624, 633, fn. 2 [147 Cal.Rptr. 486, 581 P.2d 197]; Wagner v. State of California (1978) 86 Cal.App.3d 922, 929-930 [150 Cal.Rptr. 489].) The statute reflects a legitimate concern that ‘expanding concepts of liability could imperil the construction industry unless a statute of limitations was enacted.’ (Moseley v. Abrams (1985) 170 Cal.App.3d 355, 362 [216 Cal.Rptr. 40].) Such concerns legitimately include the prohibitive cost of insurance against a perpetual and never ending risk.” (Sandy v. Superior Court (1988) 201 Cal.App.3d 1277, 1285 [247 Cal.Rptr. 677].)
The history of section 337.15 confirms that the statute is the result of general legislative concern about the economic effects of indefinite “long tail” defect liability on the construction industry. Section 337.15 was a response to considerable expansion of California’s common law of construction liability. Traditionally, a builder’s sole liability for his finished product was on an express or implied warranty, which required privity between plaintiff and defendant, and the builder thus owed no duty to third persons once the owner accepted the improvement. (See, e.g., Kolburn v. P. J. Walker Co. (1940) 38 Cal.App.2d 545, 550 [101 P.2d 747].) In the 1950’s and 1960’s, these limitations gave way to the principle that a builder may be liable to those foreseeably injured or damaged by construction defects under theories of negligence (Dow v. Holly Manufacturing Co. (1958) 49 Cal.2d 720, 724-728 [321 P.2d 736]; Oakes v. McCarthy Co. (1968) 267 Cal.App.2d 231, 247-249 [73 Cal.Rptr. 127] (Oakes)) and, at least in the case of a mass home developer, strict tort liability (Kriegler v. Eichler Homes, Inc. (1969) 269 Cal.App.2d 224, 226-229 [74 Cal.Rptr. 749]).[8]
At the same time, courts increasingly recognized ways to extend the limitations periods for suits on construction defects. As indicated above, *375 1960’s decisions confinned that the time to sue on a construction warranty was tolled while promises or attempts to repair were pending. (Aced, supra, 55 Cal.2d 573, 585; Mack, supra, 225 Cal.App.2d 583, 589.) Contemporaneous cases held that the statutes of limitations for the burgeoning theories of construction defect recovery did not begin to run until the defects were or should have been discovered (see, e.g., Aced, supra, at pp. 583-584 [warranty]; Avner v. Longridge Estates (1969) 272 Cal.App.2d 607, 616-618, 77 Cal.Rptr. 633 [strict liability]; Oakes, supra, 267 Cal.App.2d 231, 254-255 [negligence]; see also Regents, supra, 21 Cal.3d 624, 630) or while they were fraudulently concealed (e.g., Balfour, Guthrie & Co. v. Hansen (1964) 227 Cal.App.2d 173, 189 [38 Cal.Rptr. 525]).
In 1967, the Legislature responded in part to these developments by adopting section 337.1. (Stats. 1967, ch. 1326, § 1, p. 3157.) This statute provides that recovery for death, injury, or damage caused by a “patent deficiency” (§ 337.1, subd. (a), italics added) in the design, supervision, or construction of an improvement to realty must be sought within four years after substantial completion of the improvement. (Id., subds. (a), (c).) A “patent deficiency” is defined as one “apparent by reasonable inspection.” (Id., subd. (e).) Notwithstanding the general rule, if an injury to person or property occurs in the fourth year after completion, suit may be brought within one year after the injury, but no more than five years after completion. (Id., subd. (b).) The limitations period provided by section 337.1 cannot be asserted by one who actually possesses or controls the property at the time the deficiency causes the actionable damage or injury. (Id., subd. (d).) Owner-occupied single-family residences are exempt from the four-year limit. (Id., subd. (f).)
Despite this 1967 legislation, members of the building industry still faced exposure to liability for all defects in their past projects so long as these defects remained undiscovered and undiscoverable by reasonable inspection. On April 14, 1970, Assemblyman Powers introduced Assembly Bill No. 2528 (1970 Reg. Sess.), seeking to limit suits for latent construction defects to an eight-year period after substantial completion. After numerous amendments in committee, the bill was placed in the inactive file at the request of Assemblyman Powers, and it died there on August 21, 1970. (See Assem. Final Hist. (1970 Reg. Sess.) p. 761.)[9]
*376 In October 1970, the Assembly Interim Committee on the Judiciary, chaired by Assemblyman Hayes, convened a public hearing “to determine if a statute of limitations can be drafted in actions for hidden (or latent) construction defects.” (Assem. Judiciary Interim Com., Hearing on Application of the Doctrine of Strict Tort Liability to Building Construction (Oct. 23, 1970) p. 1 (1970 Committee Hearing).) Building industry representatives testified at length that the trend toward expanded and time-extended defect liability was producing a risk for which insurance was available only at prohibitive cost, if at all, thus threatening the industry’s economic health. (1970 Com. Hearing, pp. 4-51.)[10]
Appended to the 1970 Committee Hearing transcript was a survey of construction defect limitations periods adopted in other states. According to this survey, the applicable statutes of limitations ranged from four to 12 years after substantial completion of the projects in question. (1970 Com. Hearing, appen. B, pp. 11-12.)
On April 15, 1971, Assemblyman Hayes introduced Assembly Bill No. 2742 (1971 Reg. Sess.) (Assem. Bill No. 2742), which, as amended, became section 337.15. (See Assem. Final Hist. (1971 Reg. Sess.) p. 873.) As originally drafted, Assembly Bill No. 2742 provided that suits for latent construction defects, other than those based on willful misconduct or fraudulent concealment, would be subject to a limitations period of six years after substantial completion. (Assem. Bill No. 2742, as introduced Apr. 15, 1971.) A subsequent Assembly amendment removed personal injury actions from the limitations period, increased the period to 10 years, and provided for cross-complaints beyond the 10-year period by persons sued directly within that time. (Assem. Amend. to Assem. Bill No. 2742, July 22, 1971.)[11]
*377 The above-described survey of the laws of other states was made part of the legislative record of Assembly Bill No. 2742 in both the Assembly and the Senate. (See Assem. Com. on Judiciary, Analysis of Assem. Bill No. 2742, appen. B; Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2742 as amended Oct. 22, 1971, pp. 1-4.) Analyses of the bill consistently described it as “bar[ring]” or “[p]rohibit[ing]” latent defect suits brought beyond the proposed limitations period. (Assem. Com. on Judiciary, Analysis of Assem. Bill No. 2742, p. 1; Sen. Com. on Judiciary, Analysis of Assem. Bill No. 2742 as amended Oct. 22, 1971, p. 1; Assemblyman James A. Hayes, letter to Governor Reagan (Nov. 9, 1971) requesting signature on Assem. Bill No. 2742; Enrolled Bill mem. to Governor on Assem. Bill No. 2742, Nov. 16, 1971.)
Thus the Legislature, faced with a developing body of common law on the subject, carefully considered how to provide a fair time to discover construction defects, and to sue upon such defects if necessary, while still protecting a vital industry from the damaging consequences of indefinite liability exposure. For latent deficiencies, the lawmakers rejected shorter periods in favor of a limit in the upper range of those previously adopted by other jurisdictions. Moreover, by placing exemptions in the latent defect statute for personal injury, willful misconduct, and fraudulent concealment, the legislators demonstrated an intent to pick and choose the particular exceptions they wished to allow and those particular aspects of the prior case law they wished to embrace. The implication arises that except as stated, and for important policy reasons, the Legislature meant the generous 10-year period set forth in section 337.15 to be firm and final.
Significantly, the adopters of both sections 337.1 and 337.15 knew that the case law had engrafted a “tolling for repairs” rule onto the four-year discovery-based limitations period for breach of a construction warranty. Yet, despite the Legislature’s careful attention to other issues raised by prior court decisions, it did not provide a “repairs” extension in either section 337.1 or section 337.15.
On the contrary, the Legislature specified in section 337.15 that whatever limitations periods might otherwise apply, “no action” for injury to property arising from latent construction defects “may be brought” more than 10 years after substantial completion of the project. (§ 337.15, subd. (a); see also id., subd. (d); Regents, supra, 21 Cal.3d 624, 631.) The inference arises that regardless of whatever tolling rules might otherwise apply within the 10-year *378 period, the Legislature intended no such extension of the “absolute” (Regents, supra, at p. 631) 10-year limit itself. The legislative failure to ratify tolling for repairs under these circumstances is another indication that a judicial doctrine extending the 10-year limitations period for this reason would contravene the intent of section 337.15.
In one common circumstance, an equitable tolling rule would directly undermine the statutory purpose. As we have seen, section 337.15 allows one sued directly within the statutory period to cross-complain for indemnity against another project participant, even if the statute of limitations for direct actions has by then expired, so long as the cross-complaint is filed before a trial date has been set. (§§ 337.15, subd. (c), 428.10, subd. (b), 428.50, subd. (b); Valley Circle Estates, supra, 33 Cal.3d 604, 608-615.)[12] Thus, potential indemnitors can never be entirely certain they are safe once the 10-year period passes. But they should generally be able to assume that any suit which may give rise to cross-complaints against them was filed within 10 years after substantial completion of the project.
A general rule that the limitations period is tolled for repairs would destroy such an assumption. As was emphasized in FNB Mortgage, supra, 76 Cal.App.4th 1116, such a rule would allow “[a]n unsuspecting subcontractor [to] be sued for indemnity, long after the statute’s 10-year limitations period had passed, and despite the absence of any action alleging defects within the 10-year period, simply because the indemnitee (the subsequent cross-complainant) was deemed to have tolled the 10-year period [by offering or attempting to repair] and was thus subject to subsequent suit.” (Id. at p. 1133.) The “unsuspecting subcontractor[s]” caught in this net might include architects and engineers who, as in the example provided during the 1970 Committee Hearing, had since retired, but were still forced to maintain expensive errors and omissions coverage to meet their potential “long tail” liability for alleged defects in projects completed many years in the past.
Hence, the purpose of section 337.15, as revealed by its history, weighs against a judicially imposed rule that the 10-year limitations period set forth in this statute is tolled for repairs. On the other hand, countervailing policies *379 of practicality and fairness do not compel such a rule. If the defendant’s acts or promises occurred well before expiration of the 10-year limit, an extension at the end of the limitations period is unnecessary to protect the plaintiff’s rights.[13] And because the limitations period provided by section 337.15 is so. “exceptionally long” (Aas, supra, 24 Cal.4th 627, 653), it indicates the Legislature’s effort to provide, within the strict statutory period itself, a reasonable time to discover, adjust, and, if necessary, sue upon latent defects. Given the particular considerations that led the Legislature in 1971 to seek a generous but firm cutoff date for construction defect lawsuits, further extension of the period by judicial fiat is not warranted.
This case contrasts starkly with those in which we found a special need for equitable tolling. In each prior instance, the brevity of the literal limitations period would otherwise have caused forfeiture of a cause of action, or other undue hardship, despite the plaintiff’s diligent efforts to pursue his claim in a correct and orderly way. In Lambert, supra, 53 Cal.3d 1072, absent equitable tolling, literal application of the two-year statute of limitations for actions against a title insurer would have forced the insured “to defend the underlying [title] action, at [his] own expense, and simultaneously to prosecute— again at [his] own expense—a separate action against the title company for failure to defend.” (Id. at p. 1078.) In Prudential-LMI, supra, 51 Cal.3d 674, the insured had only one year after inception of the loss to sue his insurer for coverage, but that period could easily run out while the insurer, having, received a timely notice of loss, conducted the investigation necessary to determine whether the claim should be paid or denied. (Id. at pp. 687-693.)
In Bollinger, supra, 25 Cal.2d 399, the insured did sue within the 15 months allowed by the policy, but that action was dismissed, after the limitations period had expired, on a false technicality urged by the insurer. (Id. at pp. 404-411.) Similarly in Addison, supra, 21 Cal.3d 313, the plaintiffs did sue in federal court within the six-month period for actions against public agencies. Just after this brief limitations period expired by its literal terms, the government defendant moved to dismiss the federal action, whereupon plaintiffs immediately filed their state court complaint. As plaintiffs feared, the federal court subsequently dismissed their federal causes of action and *380 declined to retain their pendent state claims, leaving them without a remedy unless equitable tolling was applied. (Id. at pp. 317-319.)
Finally, in Elkins, supra, 12 Cal.3d 410, the plaintiff, acting in good faith, first pursued a timely workers’ compensation remedy against the defendants, thereby foreclosing resort to tort litigation. After the one-year statute of limitations for personal injury actions had expired, the workers’ compensation referee found that the plaintiff was not the defendant’s “employee” within the meaning of the workers’ compensation statutes, and was thus not entitled to benefits. The plaintiff then promptly filed his court action. We applied the well-established California principle that “the running of the limitations period is tolled ‘[w]hen an injured person has several legal remedies and, reasonably and in good faith, pursues one.’ [Citations.]” (Id. at p. 414.)
No similar issues are presented here. Because plaintiffs had three or four years after discovery, and up to ten years after the project’s completion, to bring their suits for latent construction defects, many of the concerns that might warrant equitable tolling are ameliorated. Indeed, were we to conclude that the generous limitations period of section 337.15 is equitably tolled for repairs, despite the absence of any specific indication that the 1971 Legislature so intended, the implication would arise that all statutes of limitations are similarly tolled or suspended in progress while the parties make sincere efforts to adjust their differences short of litigation. We find no such general principle in California law.
Plaintiffs and the dissent urge several reasons why section 337.15 should be equitably tolled for repairs. None is persuasive.
First, it is urged that if the Legislature had intended to disallow equitable tolling of section 337.15, it would have done so expressly, as in sections 340.5 (health care malpractice) and 340.6, subdivision (a) (attorney malpractice; see Laird, supra, 2 Cal.4th 606, 618; see also Battuello, supra, 64 Cal.App.4th 842, 847 [§ 366.2; one-year limitations period for surviving action against deceased person]). But an express legislative ban on equitable tolling is not the only circumstance in which courts will decline to apply this judicially developed doctrine. As is explained above, they will also do so where, as here, tolling would contravene the legislative purpose. Of course, the no-tolling result we reach under section 337.15 is consistent with our construction of the similar but shorter “two-step” statute of limitations (one year from discovery or four years from wrongful act or omission, whichever occurs first) for attorney malpractice. (§ 340.6, subd. (a); see Laird, supra, 2 Cal.4th 606, 618.)
Next, plaintiffs and the dissent assert that the legislative history of section 337.15 focuses exclusively upon the problem of a statute of limitations that *381 began only when the plaintiff discovered the defect. There is no indication, plaintiffs assert, that the Legislature meant to preclude the defendant from tolling the limitations period, once begun, by his own voluntary action.
But while delayed discovery was an important issue, the legislators’ concerns, as indicated above, were broader. They sought to ensure ample time to discover and sue upon latent construction defects, while still establishing a predictable period within which the construction and insurance industries must make provision for such suits. And though a defendant who promises or undertakes repairs might be said to “control” the time for suit against him, his conduct, as we have noted, would have consequences for unsuspecting coparticipants in the project, whose exposure to indemnity liability would thereby be extended.
Plaintiffs and the dissent emphasize our statement in Regents, supra, 21 Cal.3d 624, that section 337.15 is not a “substantive limit upon the plaintiff’s cause of action” (Regents, supra, at p. 640), but merely an “ordinary, procedural statute of limitations” (id. at p. 641) to which, they assert, equitable tolling may thus properly apply. However, their reliance on Regents is misplaced. The issue there was whether the surety on a contractor’s bond—then not among the persons specifically mentioned in the statute— nonetheless could claim the protection of section 337.15’s 10-year limitations period. The Regents majority answered that question no. (Regents, supra., at pp. 632-643.) The dissenters argued that because section 337.15 was a substantive limit on legal rights and duties, it precluded the plaintiff, in any suit brought after expiration of the 10-year period, from proving a contractor’s breach of duty which the surety must make good. (Regents, supra, at pp. 644—649 (conc. & dis. opn. of Clark, J.); see id. at p. 640 (maj. opn.).) The majority rejected that contention (id. at pp. 640-642), but nothing in the holding of Regents compels a conclusion that where section 337.15 does apply, it should be subject to equitable tolling.[14]
Plaintiffs and the dissent note that the Legislature has not expressly disagreed with the equitable tolling rule set forth in Cascade Gardens, supra, 194 Cal.App.3d 1252, and Grange Debris, supra, 16 Cal.App.4th 1349 (but see FNB Mortgage, supra, 76 Cal.App.4th 1116). Of course, the Legislature has not revisited section 337.15 at all since 1981, well before these cases were decided.[15] There are many reasons why the Legislature fails to address intervening judicial constructions of a statute, including inattention, press of *382 other business, and trust in the courts to correct their own errors. (People v. King (1993) 5 Cal.4th 59, 77 [19 Cal.Rptr.2d 233, 851 P.2d 27]; County of Los Angeles v. Workers’ Comp. Appeals Bd. (1981) 30 Cal.3d 391, 404 [179 Cal.Rptr. 214, 637 P.2d 681].) Hence, “ ‘legislative inaction is a “ ‘weak reed upon which to lean.’ ” ’ ” (Harris v. Capital Growth Investors XIV (1991) 52 Cal.3d 1142, 1156 [278 Cal.Rptr. 614, 805 P.2d 873], quoting Troy Gold Industries, Ltd. v. Occupational Safety & Health Appeals Bd. (1986) 187 Cal.App.3d 379, 391, fn. 6 [231 Cal.Rptr. 861].) Here, mere legislative silence fails to dissuade us from our conclusion that section 337.15 is not subject to equitable tolling for repairs.
Plaintiffs suggest that equitable tolling for repairs protects homeowners from unscrupulous builders who might otherwise make false promises or “band-aid” repairs in order to forestall suit until after the 10-year period had passed. Tolling for repairs is also good policy, plaintiffs maintain, because it encourages resolution of construction defect disputes without resort to the courts. But a tolling rule seems just as likely to discourage a potential defendant from undertaking voluntary remedial efforts before the limitations period expires. If his efforts failed, he would only have prolonged the already lengthy period during which he was exposed to suit.[16]
*383 Moreover, if a plaintiff can show, in a particular case, that the defendant’s promises or attempts to repair prevented a timely suit, the defendant may be equitably estopped from invoking the protection of the statute of limitations. (See discussion, post.) Thus, an automatic rule of equitable tolling is not necessary to counteract fraudulent assurances of repair.
We therefore conclude that the 10-year limitations period set forth in section 337.15 is not subject to tolling in progress while a potential defendant’s promises or attempts to repair the defect are pending. The distinct question remains whether a defendant may nonetheless be equitably estopped to assert this statute of limitations if he prevented a timely suit by his conduct upon which the plaintiffs reasonably relied.[17]
2. Equitable estoppel.
Plaintiffs assert that even if equitable tolling does not apply, their first amended complaint states facts which should estop these particular defendants from relying on the limitations period of section 337.15. Plaintiffs invoke the venerable principle that “ ‘[o]ne cannot justly or equitably lull his adversary into a false sense of security, and thereby cause his adversary to subject his claim to the bar of the statute of limitations, and then be permitted to plead the very delay caused by his course of conduct as a defense to the action when brought.’ ” (Carruth v. Fritch (1950) 36 Cal.2d 426, 433 [224 P.2d 702], quoting Howard v. West Jersey & S. S. R. Co. (N.J. Ch. 1928) 102 N.J. Eq. 517 [141 A. 755, 757-758].)
Equitable tolling and equitable estoppel are distinct doctrines. “ ‘Tolling, strictly speaking, is concerned with the point at which the limitations period begins to run and with the circumstances in which the running of the limitations period may be suspended. . . . Equitable estoppel, however, . . . comes into play only after the limitations period has run and addresses . . . the circumstances in which a party will be estopped from asserting the statute of limitations as a defense to an admittedly untimely action because his conduct has induced another into forbearing suit within the applicable limitations period. [Equitable estoppel] is wholly independent of the limitations period itself and takes its life . . . from the equitable principle that no man [may] profit from his own wrongdoing in a court of justice.’ ” (Battuello, supra, 64 Cal.App.4th 842, 847-848, quoting Bomba v. W. L. Belvidere, Inc. (7th Cir. 1978) 579 F.2d 1067, 1070.) Thus, equitable estoppel is *384 available even where the limitations statute at issue expressly precludes equitable tolling. (Leasequip, Inc. v. Dapeer (2002) 103 Cal.App.4th 394, 405-408 [126 Cal.Rptr.2d 782] [§ 340.6; attorney malpractice statute of limitations]; Battuello, supra, at pp. 847-848 [§ 366.2; special one-year limitations period for surviving actions against deceased person].)
One aspect of equitable estoppel is codified in Evidence Code section 623, which provides that “[w]henever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it.” (See DRG/Beverly Hills, Ltd. v. Chopstix Dim Sum Cafe & Takeout III, Ltd. (1994) 30 Cal.App.4th 54, 60 [35 Cal.Rptr.2d 515].) But “ ‘[a]n estoppel may arise although there was no designed fraud on the part of the person sought to be estopped. [Citation.] To create an equitable estoppel, “it is enough if the party has been induced to refrain from using such means or taking such action as lay in his power, by which he might have retrieved his position and saved himself from loss.” Where the delay in commencing action is induced by the conduct of the defendant it cannot be availed of by him as a defense.” ’ ” (Vu v. Prudential Property & Casualty Ins. Co. (2001) 26 Cal.4th 1142, 1152-1153 [113 Cal.Rptr.2d 70, 33 P.3d 487] (Vu), quoting Benner v. Industrial Acc. Com. (1945) 26 Cal.2d 346, 349-350 [159 P.2d 24], italics omitted; see also Ginns v. Savage (1964) 61 Cal.2d 520, 524-525 [39 Cal.Rptr. 377, 393 P.2d 689].)[18]
Accordingly, (1) if one potentially liable for a construction defect represents, while the limitations period is still running, that all actionable damage has been or will be repaired, thus making it unnecessary to sue, (2) the plaintiff reasonably relies on this representation to refrain from bringing a timely action, (3) the representation proves false after the limitations period has expired, and (4) the plaintiff proceeds diligently once the truth is discovered (cf. Vu, supra, 26 Cal.4th 1142, 1153 [113 Cal.Rptr.2d 70, 33 P.3d 487]), the defendant may be equitably estopped to assert the statute of limitations as a defense to the action.[19]
*385 The Court of Appeal concluded that plaintiffs’ first amended complaint adequately pled the prerequisites of equitable estoppel. According to the Court of Appeal, “[plaintiffs] alleged in their complaint that Centex had repeatedly promised to repair the damage to their homes. Based on these allegations, [plaintiffs] argued Centex was equitably estopped to assert the statute of limitations as a defense because . . . Centex’s promises caused them to delay filing suit. . . . [T]hese allegations were sufficient to overcome a demurrer based on the statute of limitations contained in section 337.15.”
We disagree. The complaint’s sole allegation on this issue is “that at various times Defendants have attempted to make repairs ... or advised Plaintiffs that the defective windows were not defective and not to file a lawsuit,” but have not properly repaired the leaking windows and associated damage, and “are [therefore] estopped to assert that Plaintiffs have not commenced this action in a timely fashion.”
This is insufficient. Contrary to the Court of Appeal’s reasoning, the complaint is devoid of any indication that defendants’ conduct actually and reasonably induced plaintiffs to forbear suing within the 10-year period of section 337.15. There is no suggestion that the repair attempts alleged, if successful, would have obviated the need for suit. Moreover, for all that appears, the “various times” at which defendants’ alleged conduct occurred were times well before the statute of limitations ran out, or even, as the trial court suggested, after it had expired. And there is no claim that the inadequacy of these repairs, or the falsity of defendants’ alleged “no defect” representations, remained hidden until after the limitations period had passed.[20] Hence, plaintiffs have pled no facts indicating that defendants’ conduct directly prevented them from filing their suit on time. Accordingly, the first amended complaint establishes no basis to estop defendants from asserting that plaintiffs’ causes of action are barred by the 10-year statute of limitations.
3. Amendment of complaint.
As noted above, the trial court sustained defendants’ demurrer to plaintiffs’ first amended complaint without affording plaintiffs an opportunity to amend. The court found, among other things, that the complaint failed to state facts sufficient to estop defendants from asserting that the statute of limitations had expired. The court conceded that amendment might cure the purely factual *386 deficiencies, but it ultimately reasoned that tolling for repairs was simply not available, as a matter of law, to extend the limitations period of section 337.15.
In reversing, the Court of Appeal determined that both tolling and estoppel were available, and that the first amended complaint was sufficient on both theories. We, on the other hand, have concluded that while section 337.15’s 10-year limitations period is not tolled for repairs, defendants might be estopped under particular circumstances to invoke this statute of limitations. However, we have agreed with the trial court that the current complaint fails to state sufficient facts to establish such an estoppel.
Without stressing the point, plaintiffs have urged at all stages that if their complaint is deficient, but could be remedied by additional factual allegations, a chance should be afforded to assert such facts. The question thus arises whether plaintiffs should be allowed an opportunity to amend to state facts sufficient to set forth an equitable estoppel. In the specific circumstances of this case, we conclude the answer is “no.”
Of course, “[i]t is axiomatic that if there is a reasonable possibility that a defect in the complaint can be cured by amendment . . . , a demurrer should not be sustained without leave to amend. [Citations.]” (Minsky v. City of Los Angeles (1974) 11 Cal.3d 113, 118 [113 Cal.Rptr. 102, 520 P.2d 726].) But the particular history of this case persuades us there is no reasonable possibility plaintiffs can state credible facts to support an equitable estoppel.
We realize that after the trial court sustained defendants’ demurrer to the first amended complaint—the ruling at issue here—plaintiffs did offer more specific estoppel allegations in a proposed second amended complaint. This proposed complaint made express claims that, from the time plaintiffs purchased their homes until expiration of the 10-year limitations period, defendants engaged in a pattern of falsely promising repairs, or making sham repairs they knew would fail, and then refused to respond further once the 10-year period had passed, all with the purpose and effect of inducing plaintiffs to forbear suing within the statutory time. The trial court rejected the proposed complaint, both as untimely and on the incorrect assumption that if section 337.15 could not be tolled for repairs, equitable estoppel was equally unavailable.
But even if the new allegations of the proposed second amended complaint were technically sufficient to establish an estoppel, several circumstances negate any inference that these new assertions had a substantial basis in fact. In the first place, the gravamen of the new allegations—that defendants’ promises and attempts to repair continued throughout the entire 10-year *387 period, that plaintiffs were thereby induced to forbear suing until the period expired, and that defendants then abruptly refused further cooperation—must have been within plaintiffs’ personal knowledge at the time they filed their lawsuit. No reason appears why these assertions, if true, were not presented sooner.
Doubt about the credibility of the new allegations is heightened by developments in this court. During oral argument, plaintiffs’ counsel was asked what additional facts, not included in the first amended complaint, could be asserted to support a theory of equitable estoppel. At a minimum, counsel could have referred us to the claims set forth in the proposed second amended complaint. He did not do so. Instead, he responded only that repairs promised or attempted by defendants at any time during the 10-year period gave rise, as a matter of law, to a form of implicit reliance by plaintiffs that defects in the construction of plaintiffs’ homes would be remedied. This, counsel argued, should extend the statute of limitations by a time equivalent to the period during which repairs were pending. In short, counsel simply reiterated a theory of equitable tolling which we have rejected in this opinion.
Under these circumstances, we are convinced there is no reasonable possibility plaintiffs can assert new, credible facts suggesting that defendants are equitably estopped to assert the 10-year statute of limitations for latent construction defects. Accordingly, no basis appears to allow a remand for purposes of amendment.[21]
*388 CONCLUSION
Equitable tolling does not apply to the 10-year statute of limitations set forth in section 337.15. The Court of Appeal decisions in Grange Debris Box & Wrecking Co. v. Superior Court, supra, 16 Cal.App.4th 1349, and Cascade Gardens Homeowners Assn. v. McKellar & Associates, supra, 194 Cal.App.3d 1252, are disapproved to the extent they concluded otherwise. Moreover, plaintiffs have failed to plead facts that would equitably estop defendants from asserting this limitations period, and there appears no reasonable possibility the deficiency can be remedied by credible amendment of the complaint. The trial court thus correctly sustained defendants’ demurrer to plaintiffs’ first amended complaint without leave to amend, and dismissed the action. The Court of Appeal erred by overturning the judgment of dismissal. The judgment of the Court of Appeal is therefore reversed.
George, C. J., Chin, J., Brown, J., and Moreno, J., concurred.

 All further unlabeled statutory references are to the Code of Civil Procedure.

 Section 337.15 continues to apply fully to many construction projects, including all nonresidential projects, but certain categories of residential construction, including (1) common interest developments and (2) residential units first sold after January 1, 2003, are subject to separate, more recent legislation affecting the applicable limitations periods for suit upon latent defects in those projects. (Civ. Code, §§ 895 et seq., 941, 1375; see further discussion, post.) The homes at issue here were first sold before January 1, 2003, and no party has suggested they are part of a common interest development. Hence, as the parties do not dispute, section 337.15 applies to this case.

 The trial court never expressly ruled on defendants’ request for judicial notice of the November 1988 completion notices on plaintiffs’ homes. However, as the trial court indicated, there seems no dispute that plaintiffs’ suit is untimely under the 10-year statute of limitations except for the possibility of equitable tolling or equitable estoppel.

 No other defendant has appeared on appeal, either in the Court of Appeal or in this court. The California Building Industry Association, the National Home Builders Association, and the Civil Justice Association of California have filed amicus curiae briefs in this court on behalf of Centex.

 As the text indicates, tolling extends the limitations period no matter when the tolling event occurred. This produces generally fair results where, as in the usual equitable tolling situation, the underlying limitations period itself is quite short. (See text discussion, ante and post.) But where a lengthy limitations statute such as section 337.15 is at issue, automatic tolling bears a far less direct relationship to fundamental fairness. The facts of Cascade Gardens, supra, 194 Cal.App.3d 1252, demonstrate the point. There, a certificate of completion of a construction project was recorded on July 13, 1973. If not tolled, the 10-year limitations period of section 337.15 would thus have expired on July 12, 1983. However, during the four-month period from January 1974 until April 1974, the contractor attempted repairs. The plaintiffs finally brought their suit on August 12, 1983. The Court of Appeal deemed the suit timely under section 337.15 because the 1973-1974 repair efforts had postponed expiration of the 10-year period by four months, from July to November 1983. (Cascade Gardens, supra, at pp. 1254—1258.)

 Although the dissent concedes that Aced, Mack, and Southern Cal. Enterprises were “warranty cases” (dis. opn., post, at p. 391), it insists Cascade Gardens, supra, 194 Cal.App.3d 1252, properly cited those early decisions to support a general “tolling for repairs” rule that applies even against the later-adopted “absolute” 10-year limitations period of section 337.15. We disagree. The dissent splices together isolated snippets from the early cases to suggest that their reasoning on tolling issues extended beyond warranty principles. But this strained treatment of the early authorities obscures their overall context. Aced, Mack, and Southern Cal. Enterprises were warranty cases in fact, and they justified their holdings on the tolling-for-repairs issue by applying warranty law (Aced, supra, 55 Cal.2d 573, 577, 582-586; Mack, supra, 225 Cal.App.2d 583, 588-590; Southern Cal. Enterprises, supra, 78 Cal.App.2d 750, *373 758-759) to statutes of limitations not influenced by the special concerns that prompted enactment of section 337.15 (see discussion, post).

 In a decision rendered after both Cascade Gardens, supra, 194 Cal.App.3d 1252, and Grange Debris, supra, 16 Cal.App.4th 1349, but before FNB Mortgage, supra, 76 Cal.App.4th 1116, the court in A & B Painting & Drywall, Inc. v. Superior Court (1994) 25 Cal.App.4th 349 [30 Cal.Rptr.2d 418] refused to extend the tolling rule of Cascade Gardens to a situation in which the repairs were made by someone other than the defendant. (A & B Painting, supra, at pp. 354-355.)

 In recent cases, decided long after adoption of section 337.15, we have refined the respective purviews of warranty and tort theories as they apply to construction defects. Under the so-called economic loss rule, tort recovery is available only insofar as a defect causes personal injury or damage to property other than the defective product, while “the law of contractual warranty governs damage to the product itself.” (Jimenez v. Superior Court (2002) 29 Cal.4th 473, 483 [127 Cal.Rptr.2d 614, 58 P.3d 450]; Aas v. Superior Court (2000) 24 Cal.4th 627, 639 [101 Cal.Rptr.2d 718, 12 P.3d 1125] (Aas).) The applicability of those theories appears further affected by new legislation applicable to individual housing units first sold on or after January 1, 2003. (See Civ. Code, § 895 et seq., as enacted by Stats. 2002, ch. 722, § 3.) The new law sets detailed quality and performance standards for new residential construction and provides that a homeowner may sue for (1) specific violations of the statutory standards (Civ. Code, § 896) and (2) any other “function or component of [the] structure,” to the extent inadvertently omitted from the standards, that causes damage (id., § 897).

 Centex asked us to take judicial notice of various legislative materials, including documents from the enactment histories of (1) Assembly Bill No. 2528 (1970 Reg. Sess.) (see text discussion, ante), (2) Assembly Bill No. 2742 (1971 Reg. Sess.), which became section 337.15, and (3) Assembly Bill No. 312 (1979-1980 Reg. Sess.), which amended section 337.15, in response to our decision in Regents, supra, 21 Cal.3d 624, to provide that the sureties of persons involved in construction projects are also protected by the 10-year limitations period for latent construction defects. It is not clear that we must take judicial *376 notice of these materials in order to consider them. However, they are relevant to the legal arguments Centex advances, and they appear to be proper subjects of judicial notice. (Evid. Code, §§ 452, subd. (c) [official acts of legislative, executive, and judicial departments of the United States or any state], 459.) Plaintiffs did not object, and we therefore granted the request for judicial notice.

 For example, Jack Barrish, President of the Structural Engineers of California, testified about “an architect in Sacramento [who] retired some five years ago and is still having to carry coverage. There is no statute of limitations. So in order to protect his estate, he is still carrying insurance covering his old projects.” (1970 Com. Hearing, p. 48.) Barrish further testified that “[i]n my particular case, I was forced to take out coverage with a new carrier and for half the coverage I pay more than three times the rate, because of the exposure the engineer has. Q] We have been informed by our factors . . . that were the statute of limitations to be passed, then there would be more coverage at less rate for more people against possible suits of this nature.” (Ibid.)

 As originally enacted in 1971, section 337.15 measured the limitations period from the time of “substantial completion” of the improvement, but did not define “substantial completion.” Subdivision (g), added in 1981 (Stats. 1981, ch. 88, § 1, pp. 204—205), modified the measurement period to provide that the 10-year period would commence upon “substantial *377 completion . . . , but not later than the date of one of the following, whichever first occurs: HQ (1) The date of final inspection by the applicable public agency. HQ (2) The date of recordation of a valid notice of completion. HO (3) The date of use or occupation of the improvement. H[] (4) One year after termination or cessation of work on the improvement.” (Italics added.)

 As this court recognized in Valley Circle Estates, supra, 33 Cal.3d 604, the rule of section 337.15, subdivision (c), allowing cross-complaints for indemnity beyond the 10-year period, is consistent with the common law rule that an action for equitable indemnity does not accrue, for purposes of the statute of limitations, until the indemnitee pays a judgment or settlement that entitles him to indemnity, and that a tort defendant retains the right to seek equitable indemnity from another tortfeasor even if the plaintiffs action against the cross-defendant is barred. (Valley Circle Estates, supra, at p. 611; see also People ex rel. Department of Transportation v. Superior Court (1980) 26 Cal.3d 744, 748, 751 [163 Cal.Rptr. 585, 608 P.2d 673], and cases there cited; Watts v. Crocker-Citizens National Bank (1982) 132 Cal.App.3d 516, 524 [183 Cal.Rptr. 304].)

 At oral argument, plaintiffs’ counsel made clear their position that the 10-year limitations period should automatically be tolled, or suspended in progress, during any time a defendant’s promises or efforts to repair were pending, no matter when these events occurred. In support of this view, counsel urged that a homeowner’s “acceptance” of the defendant’s promises or repairs at any time during the 10-year limitations period is a form of implicit reliance which justifies a corresponding additional time, at the end of the limitations period, to determine whether the repairs were successful. But a policy judgment of that magnitude is for the Legislature, not the courts. For reasons we have detailed, we cannot conclude the Legislature made such a judgment when it adopted section 337.15.

 The year after Regents, supra, 21 Cal.3d 624, was decided, the Legislature obviated the holding of that case, at least for the future, by expressly extending the protection of section 337.15 to sureties. (Stats. 1979, ch. 571, § 1, p. 1797.)

 Plaintiffs insist that section 337.15 has been amended “on numerous occasions” since Cascade Gardens, supra, 194 Cal.App.3d 1252, was decided, but this simply is not so. Section 337.15 was last amended by Statutes 1981, chapter 88, section 1, pages 204-205. Cascade Gardens was decided six years later, in 1987.

 As evidence that the Legislature supports the principle of tolling for repairs in construction defect cases, plaintiffs direct our attention to new Civil Code section 895 et seq., adopted in 2002. (See fns. 2, 8, ante.) This statutory scheme comprehensively revises the law applicable to construction defect litigation for individual residential units, other than condominium conversions, first sold after January 1, 2003. (Civ. Code, §§ 896, 938.) Where it applies, the new scheme expressly supersedes section 337.15, though it retains the basic premise that suit may commence no later than 10 years after substantial completion of the project. (Civ. Code, § 941, subds. (a), (d).) Among other things, the new law requires, as a prerequisite to suit, elaborate “nonadversarial procedure[s]” to try to resolve the dispute (id., §§ 910 et seq., 914), including a prelitigation opportunity for the builder to effect repairs (id., §§ 917-928). Civil Code section 927 states that if the statute of limitations runs during the repair process, the time for filing a suit for an actionable defect, or for inadequate repairs, is tolled from the date the claimant originally notified the builder of his claim until 100 days after the repair process is complete. The new scheme further provides, in cryptic fashion, that “[e]xisting statutory and decisional law regarding tolling of the statute of limitations shall apply to the time periods for filing an action . . . under this title,” but that repairs shall not toll the limitations period except as specifically provided in section 927. (Civ. Code, § 941, subd. (e).) Civil Code section 895 et seq. demonstrates only that the Legislature knows how to toll the statute of limitations for repairs when it wishes to do so. Moreover, a 2002 statute that provides for a limited form of statutory tolling while mandatory dispute resolution efforts proceed, but otherwise explicitly excludes tolling for repairs, affords little support for the premise that equitable tolling should apply under a 1971 statute of limitations to a defendant’s voluntary efforts to remedy alleged defects. We reach a similar conclusion with respect to Civil Code section 1375, specially applicable to common interest developments, which includes somewhat similar express provisions for tolling while mandatory dispute adjustment procedures go forward in timely fashion. (Id., subds. (a), (c).)

 We need not and do not decide here whether section 337.15 is subject to the several separate statutes that specify when certain limitations periods will be tolled. (E.g., §§ 351 [defendant’s absence from state], 352 [plaintiff’s minority or insanity], 352.1 [plaintiff’s incarceration], 352.5 [pending restitution order against defendant], 354 [plaintiff’s disability by virtue of state of war], 356 [injunction against commencement of action].)

 The defendant’s statement or conduct must amount to a misrepresentation bearing on the necessity of bringing a timely suit; the defendant’s mere denial of legal liability does not set up an estoppel. (Vu, supra, 26 Cal.4th 1142, 1149-1153; Neff v. New York Life Ins. Co. (1947) 30 Cal.2d 165, 174-175 [180 P.2d 900].)

 Because equitable estoppel, unlike equitable tolling, operates independently of the limitations period itself (see text discussion, ante), it is not clear that a defendant who is directly sued beyond the 10-year period of section 337.15, but is estopped by his personal conduct from asserting the statutory bar, may thereafter cross-complain against another project participant for indemnity pursuant to subdivision (c) of the statute. That issue is not before us, and we do not address it.

 As indicated above (see fn. 18, ante), to the extent defendants’ alleged advice that the windows were not defective, and that a lawsuit should not be filed, was a mere denial of defendants’ liability, rather than a representation of fact, it was insufficient to establish an estoppel to assert the statute of limitations. (Vu, supra, 26 Cal.4th 1142, 1149-1153.)

 There is no ground to conclude that plaintiffs simply have not understood the distinction between tolling and estoppel, as they apply to this case. Though tolling was the principal issue debated in the trial court, and though the parties sometimes referred to the two theories as one, the record nonetheless suggests plaintiffs were aware of estoppel as a distinct concept, and understood it was prudent to allege facts supporting that theory. The first amended complaint alleged, inter alia, that defendants made promises to repair, assured plaintiffs they were construction experts and would remedy all defects, and “advised [p] lain tiffs ... not to file a lawsuit.” As a result, the complaint asserted, defendants were “estopped” to assert the action was untimely. In opposition to defendants’ demurrer, plaintiffs urged that the first amended complaint sufficiently alleged plaintiffs’ “[r]eliance” on defendants’ promises and attempts to repair, and that defendants’ conduct, as alleged, “estopped” them from invoking the statute of limitations.
In papers supporting their later motion to amend, plaintiffs’ counsel represented that they had recently learned of defendants’ similar conduct in other residential developments, whereby defendants “wilfully lulled homeowners into a sense of security [by promising repairs] until [defendants were confident that these homeowners would refrain from instituting litigation until the applicable statute of limitations had expired.” This language suggests counsel understood the essential elements of equitable estoppel, while failing to explain why similarly relevant allegations within plaintiffs’ personal knowledge were not presented sooner, if true.
Finally, plaintiffs’ appellate briefs, both in the Court of Appeal and in this court, indicate their full awareness that tolling and estoppel are distinct theories. Hence, there could have been no confusion about the import of this court’s question at oral argument.