**NOT FOR PUBLICATION**

FILED

FEB 23 2016

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| KRAFT AMERICAS, L.P., a Delaware limited partnership, | No. 14-55105 |
| Plaintiff - Appellant, | D.C. No. 2:12-cv-03681-JAK-E |
| v. | MEMORANDUM[*] |
| OLDCASTLE PRECAST, INC., a Washington corporation, | |
| Defendant - Appellee. | |

Appeal from the United States District Court
for the Central District of California
John A. Kronstadt, District Judge, Presiding

Submitted February 9, 2016[**]
Pasadena, California

Before: FARRIS, CLIFTON, and BEA, Circuit Judges.

Plaintiff Kraft Americas, L.P. appeals from the district court's summary

judgment in favor of Defendant Oldcastle Precast, Inc. We affirm.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Kraft argues that the district court erred when it determined that the statute of limitations for its breach of contract claim began to run on December 17, 2007. Kraft contends that the limitations period actually began to run on April 28, 2008, when Oldcastle informed Kraft that it would not purchase a certain company, Company A, and that its claim was timely with respect to that later date.

Kraft's argument depends on the existence of an agreement that obligated Oldcastle to acquire Company A in the event that it acquired another target company, Company B. If such an agreement existed, then the "last element essential to the cause of action" would be the nonacquisition of Company A. *April Enterprises, Inc. v. KTTV*, 147 Cal. App. 3d 805, 826 (1983). Otherwise the nonacquisition of Company A would be irrelevant, and Kraft's cause of action would have accrued on December 17, 2007, when Oldcastle purchased Company B.

Kraft argues that its May 2007 confidentiality agreement with Oldcastle created an obligation to purchase Company A. But "California law is clear that there is no contract until there has been a meeting of the minds on *all* material points." *Banner Entertainment, Inc. v. Superior Court*, 62 Cal. App. 4th 348, 357-58 (1998). The May agreement is a standard confidentiality and non-use agreement that lacks even the most basic elements of mutuality regarding an

2

obligation to purchase Company A. The agreement says nothing about the acquisition of property, and it does not even mention Company A or Company B. Although the agreement states that Oldcastle and Kraft "will discuss various transactions," that language does not reflect a mutual understanding that if Oldcastle were to purchase Company B, it would also have to purchase Company A.

Kraft also argues that the parties' various communications regarding Company A and Company B created an implied-in-fact agreement that Oldcastle would either acquire both companies or neither. But Kraft has not cited to any record evidence showing that Oldcastle intended to make a contract with Kraft that would require it to acquire Company B if it acquired Company A. "[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment." *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081-82 (9th Cir. 1996). Therefore, the district court properly concluded that Kraft's breach of contract claim accrued on December 17, 2007.

Equitable tolling does not alter the result. "The effect of equitable tolling is that the limitations period stops running during the tolling event, and begins to run again . . . when the tolling event has concluded." *Lantzy v. Centex Homes*, 31 Cal. 4th 363, 370-71 (2003) (emphasis omitted). Assuming that equitable tolling

3

applies, Kraft would be entitled to only 64 days credit, whereas its claim was filed more than four months late. Even considering an equitable tolling period, its claim was untimely.

Kraft also argues that the district court erred when it concluded that its trade secret misappropriation claim accrued on December 17, 2007, because it did not learn about certain acts of misappropriation until discovery commenced. But in its amended complaint, Kraft alleged that Oldcastle purchased and operated Company B using Kraft's trade secrets. Kraft was aware of that acquisition when it occurred, and claimed at that time that Oldcastle had harmed it. Indeed, Kraft sent a bill for services rendered in conjunction with the transaction on December 17, 2007, and accused Oldcastle of acting in bad faith on January 8, 2008. It does not matter that Kraft discovered additional acts of misappropriation at a later date. Under California law, "the continued improper use or disclosure of a trade secret after defendant's initial misappropriation is viewed . . . as part of a single claim of 'continuing misappropriation' accruing at the time of the initial misappropriation." *Cadence Design Systems, Inc. v. Avant! Corp.*, 29 Cal. 4th 215, 218 (2002). The district court properly concluded that Kraft's claim accrued on December 17, 2007, and that it was time barred.

**AFFIRMED.**

4