[No. A120323. First Dist., Div. Three. Feb. 11, 2009.]

MEHMET GUNDOGDU et al., Plaintiffs and Appellants, v. KING MAI, INC., Defendant and Respondent.

## COUNSEL

Anderlini, Finkelstein, Emerick & Smoot and Merrill G. Emerick for Plaintiffs and Appellants.

Archer Norris, W. Eric Blumhardt, Allan L. Isbell; Lorber, Greenfield & Polito and Ron U. Lunski for Defendant and Respondent.

## OPINION

**POLLAK, J.**—Plaintiffs Mehmet and Aynar Gundogdu (the Gundogdus) appeal a summary judgment in favor of defendant King Mai, Inc., a California corporation doing business as Hyde Park Estates (King Mai), on their complaint for negligence and breach of implied warranty. Plaintiffs contend that the court erred in holding their action for damages arising out of defects in the construction of their home to be barred by the 10-year statute of limitations in Code of Civil Procedure section 337.15.[1] We affirm.

### Background

On November 2, 1995, King Mai filed a notice of completion for a home it constructed on its own account at 199 Kings Court in San Carlos, California. On March 13, 1997, plaintiffs purchased the home from King Mai. The purchase contract identified 26 categories of repairs that King Mai agreed to complete. Between March and August 1997, King Mai attempted but failed to complete the repairs to plaintiffs' satisfaction. In August, King Mai confirmed that certain repairs had not been completed but pledged to continue working on them. In October 1997, plaintiffs, still unhappy with the repair work, had an independent inspection performed. The inspection report identified numerous deficiencies, including defects in the retaining wall, improper installation of windows and doors in the master bedroom and living room, and cracked trim. It is unclear from the record when this report was delivered to King Mai and no further repairs were performed in response to the report.

---

[1] All statutory references are to the Code of Civil Procedure.

In December 2002, plaintiffs contacted King Mai about water damage caused by leakage following a winter storm. King Mai acknowledged potential responsibility for the leak and confirmed that it would repair the damage. In January 2003, plaintiffs wrote to King Mai complaining that there had been structural water damage in the home for five years. Plaintiffs warned that they would take legal action if repairs were not completed immediately. Within days, King Mai informed plaintiffs in writing that it was not responsible for the leak or any resulting water damage.

In February 2004, plaintiffs obtained a second home inspection, which revealed problems with excess dirt in the crawl space around the foundation of the home. The report also confirmed that some of the prior defects had not been corrected. King Mai refused to make any further repairs. On April 13, 2006, plaintiffs filed their complaint for negligence and breach of implied warranty. The complaint alleges that King Mai breached its "duty to build the residence within the applicable standards of the building industry and in a workmanlike manner" and that it breached its implied warranty that the home "was built in a workmanlike manner and free from both patent and latent defects." King Mai moved for and was granted summary judgment on the ground that the complaint was barred by the 10-year statute of limitations in section 337.15. Plaintiffs filed a timely notice of appeal.

**Discussion**

1. *Standard of Review*

The standard of review for summary judgment is well established. The motion "shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (§ 437c, subd. (c).) A moving defendant has met its burden of showing that a cause of action has no merit by establishing that one or more elements of a cause of action cannot be established or that there is a complete defense. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 849–850 [107 Cal.Rptr.2d 841, 24 P.3d 493]; *Lackner v. North* (2006) 135 Cal.App.4th 1188, 1196 [37 Cal.Rptr.3d 863].) We independently review an order granting summary judgment, viewing the evidence in the light most favorable to the nonmoving party. (*Lackner v. North, supra*, at p. 1196.)

2. *Statute of Limitations*

King Mai moved for summary judgment on the ground that the 10-year statute of limitations found in section 337.15 is a complete bar to plaintiffs' action. Section 337.15, subdivision (a) provides in relevant part,

"No action may be brought to recover damages from any person, or the surety of a person, who develops real property or performs or furnishes the design, specifications, surveying, planning, supervision, testing, or observation of construction or construction of an improvement to real property more than 10 years after the substantial completion of the development or improvement for . . . [¶] (1) Any latent deficiency in the design, specification, surveying, planning, supervision, or observation of construction or construction of an improvement to, or survey of, real property." The 10-year period begins to run no later than "[t]he date of recordation of a valid notice of completion." (*Id.*, subd. (g)(2).) Thus, section 337.15 imposes " 'an absolute requirement that a suit . . . to recover damages for a [latent] construction defect be brought within 10 years of the date of substantial completion of construction, regardless of the date of discovery of the defect.' " (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 369 [2 Cal.Rptr.3d 655, 73 P.3d 517] (*Lantzy*).) The 10-year limitations period is not "subject to 'equitable tolling' while the defendant's promises or attempts to remedy a defect are pending." (*Id.* at pp. 370, 373.) There are, however, limited exceptions to the statute's application. The statute does "not apply to actions based on willful misconduct or fraudulent concealment." (§ 337.15, subd. (f).) And, under subdivision (e) of section 337.15, the statute of limitations may "not be asserted by way of defense by any person in actual possession or the control, as owner, tenant or otherwise, of such an improvement, at the time any deficiency in the improvement constitutes the proximate cause for which it is proposed to bring an action."

The notice of completion for plaintiffs' home was filed in November 1995 and plaintiffs' action was not filed until April 2006. Plaintiffs concede that if section 337.15 is applicable it bars their action. They contend, however, that subdivision (e) precludes King Mai from asserting section 337.15 as a defense "because King Mai owned the home for a period of time after the completion of the home" and because the defects occurred while King Mai owned the home. Plaintiffs do not assert that King Mai is precluded from asserting the statute of limitations because it owned and was in control of the property during the "construction phase" of their home. Plaintiffs acknowledge that such an argument would essentially nullify the statute. (See *Eden v. Van Tine* (1978) 83 Cal.App.3d 879, 886 [148 Cal.Rptr. 215] ["All contractors, developers, etc. are in control of the project at some stage of its development and plaintiffs' application of [subdivision (e)] would deny them the defense intended."].) Plaintiffs argue, however, that the statute of limitations is unavailable here because "King Mai owned the subject property for almost a year and a half from the time the construction phase was complete until the Gundogdus purchased it." We disagree.

■ Plaintiffs do not allege that King Mai's work after completion of the home caused their damages. The defects they allege caused their damages

occurred during construction of the building. Thus, the question is whether King Mai's passive ownership of the property prior to its sale precludes King Mai from asserting the limitation defense. We conclude that such an interpretation of section 337.15, subdivision (e) would be contrary to the purpose of the statute.

" ' "[T]he purpose of section 337.15 is to protect contractors and other professionals and tradespeople in the construction industry from perpetual exposure to liability for their work. [Citations.] The statute reflects a legitimate concern that 'expanding concepts of liability could imperil the construction industry unless a statute of limitations was enacted.' [Citation.] Such concerns legitimately include the prohibitive cost of insurance against a perpetual and never ending risk." ' " (*Acosta v. Glenfed Development Corp.* (2005) 128 Cal.App.4th 1278, 1294 [28 Cal.Rptr.3d 92]; *Lantzy, supra,* 31 Cal.4th at p. 374.) The different treatment of owners and contractors has been explained as follows: " 'A contractor is in the business of constructing improvements and must devote his capital to that end; the need to provide reserves against an uncertain liability extending indefinitely into the future could seriously impinge upon the conduct of his enterprise.' On the other hand, one who owns the property or controls it at the time of the accident (i.e., at the time the defect constitutes the proximate cause of the damage or injury) is likely to have insurance." (*Eden v. Van Tine, supra,* 83 Cal.App.3d at p. 886, quoting *Regents of University of California v. Hartford Acc. & Indem. Co.* (1978) 21 Cal.3d 624, 633, fn. 2 [147 Cal.Rptr. 486, 581 P.2d 197], superseded by statute on different grounds as stated in *Lantzy, supra,* 31 Cal.4th at p. 375, fn. 9.) In *Gaggero v. County of San Diego* (2004) 124 Cal.App.4th 609, 618–619 [21 Cal.Rptr.3d 388], the court offered an additional rationale for the exception: " ' "First, the class of persons to whom builders may be liable is larger than the class to which owners may be liable . . . . Second, a builder may be liable for construction defects under various legal theories—contract, warranty, negligence, and perhaps strict liability in tort. Landowner liability for such defects, on the other hand, typically lies only in tort, unless the landowner is a lessor, in which case he is liable only for events occurring while the tenant is in possession . . . . Third, landowners can ordinarily avoid liability by taking adequate care of their land and structures . . . . The builder has no such control over his product after relinquishing it to the landowner . . . ." ' " Here, plaintiffs' complaint for construction defects is premised on King Mai's conduct as the developer of the property, not on liability incurred as a landowner. Absent any allegation that King Mai's conduct following completion of the home caused plaintiffs' damages, there is no reason why King Mai should be denied the protection that section 337.15 extends to developers.

*Leaf v. City of San Mateo* (1980) 104 Cal.App.3d 398, 405–406 [163 Cal.Rptr. 711], relied on by plaintiffs, is distinguishable. In that case, the

owners of a duplex damaged by subsidence brought an action against the City of San Mateo for inverse condemnation, continuing nuisance, and a dangerous and defective condition of public property. The complaint alleged that the city's storm and sanitary sewer easement located on and near the plaintiffs' property was funneling water onto the property. (*Id.* at p. 404.) The city claimed that the plaintiffs' action was barred by section 337.15 because the duplex was built more than 10 years before the action was filed. The court rejected this argument, holding that subdivision (e) of section 337.15 precluded the city from asserting the statute as a defense because it remained in possession and control of the storm and sanitary sewer easement. The court reiterated that the purpose of the 10-year statute is to protect developers of real estate against liability extending indefinitely into the future and that the city, which retained control of the sewer easement, "was not within the protected class, specifically developers, which was intended by this statute." (104 Cal.App.3d at p. 405.) The court also noted that unlike an action that the plaintiffs had previously brought against the developers of the property, premised on theories of defective engineering and manufacture, the action against the city was "premised on the liability of the City for a present condition of its property which not only contributed to the property damage of which plaintiffs were previously aware, but which plaintiffs allege has independently caused them damage in the form of tripled or quadrupled cost of repair." (*Id.* at p. 410, italics omitted.) In contrast, plaintiffs' claims against King Mai are premised on its liability for defects in the construction of their home that occurred more than 10 years ago. King Mai thus falls within the class of developers protected by the statute.

Plaintiffs also argue for the first time in their reply brief that the 10-year limitations period was tolled for the approximately 16-month period between the filing of the notice of completion and the sale of the property. They suggest that "[w]here a developer completes a project but retains ownership and control, the 10-year period begins to run upon the sale of the project. As long as suit was filed within 10 years of that date it should not be barred." They interpret subdivision (e) of section 337.15 to "mean that a developer cannot assert [the statute of limitations] as a defense for that period of time it retained actual possession or control of the improvement." Plaintiffs' argument, for which they cite no authority, is contrary to both the plain language of the statute and substantial case law.

█ Section 337.15, subdivision (g), which governs the time from which the limitations period runs, provides, "The 10-year period specified in subdivision (a) shall commence upon substantial completion of the improvement, but not later than the date of one of the following, whichever first occurs: [¶] (1) The date of final inspection by the applicable public agency. [¶] (2) The date of recordation of a valid notice of completion. [¶] (3) The date of use or occupation of the improvement. [¶] (4) One year after

termination or cessation of work on the improvement. [¶] The date of substantial completion shall relate specifically to the performance or furnishing design, specifications, surveying, planning, supervision, testing, observation of construction or construction services by each profession or trade rendering services to the improvement." Long before subdivision (g) was amended to define "substantial completion," the court in *Eden v. Van Tine, supra,* 83 Cal.App.3d at page 884, rejected the argument that the phrase "substantial completion" was meant to be the time of sale or delivery of a home to a buyer. In *Schwetz v. Minnerly* (1990) 220 Cal.App.3d 296, 308–309 [269 Cal.Rptr. 417] and footnote 8, the court confirmed that under subdivision (g) as it now reads, the statute begins to run upon substantial completion of the new home regardless of when other homes in a subdivision are completed or sold.

### 3. *Equitable Estoppel*

■ Plaintiffs contend that if section 337.15 applies, King Mai nonetheless should be equitably estopped from asserting it as a defense. In *Lantzy, supra,* 31 Cal.4th at page 384, the court held that a defendant may be equitably estopped from asserting the statute of limitations as defense to an action concerning latent construction defects in improvement to real property under the following conditions: "(1) if one potentially liable for a construction defect represents, while the limitations period is still running, that all actionable damage has been or will be repaired, thus making it unnecessary to sue, (2) the plaintiff reasonably relies on this representation to refrain from bringing a timely action, (3) the representation proves false after the limitations period has expired, and (4) the plaintiff proceeds diligently once the truth is discovered . . . ."

The undisputed facts in this case defeat plaintiffs' claim of equitable estoppel as a matter of law. (*Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 319 [24 Cal.Rptr.2d 597, 862 P.2d 158] [application of equitable estoppel is ordinarily a question of fact; however, it is properly resolved as a matter of law when only "one inference may be reasonably drawn" from the material facts].) Plaintiffs' statement of undisputed material facts establishes that they were made aware of all alleged defects at the latest by February 11, 2004, and that after they provided the second home inspection report to King Mai on that date, King Mai "refused to make the necessary or any repairs." The limitations period did not expire until November 2005 and plaintiffs did not file their complaint until April 2006. Thus, King Mai's representation that it would make all necessary repairs did not "prove false after the limitations period ha[d] expired" nor did plaintiffs proceed diligently once the truth was discovered.

## Disposition

The judgment is affirmed. King Mai shall recover its costs on appeal.

McGuiness, P. J., and Jenkins, J., concurred.