Filed 5/6/21 Upland Medical and Dental Owners etc. v. MLD-Medical CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| UPLAND MEDICAL AND DENTAL OWNERS ASSOCIATION,<br><br>Plaintiff and Appellant,<br><br>v.<br><br>MLD-MEDICAL, LLC et al.,<br><br>Defendants and Respondents. | E072257<br><br>(Super.Ct.No. CIVDS1804931)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County. Judge David Cohn. Affirmed.

The Naumann Law Firm, William H. Naumann, Loren K. Shiu; Williams Iagmin and Jon R. Williams for Plaintiff and Appellant.

Lincoln Gustafson & Cercos, Theodore R. Cercos and Richard J. Reese for Defendants and Respondents.

1

Plaintiff Upland Medical and Dental Owners Association appeals a summary judgment on their construction defect lawsuit in favor of defendants MLD-Medical, LLC (MLD) and Fullmer Construction, Inc. (Fullmer). MLD was the developer and original owner, and Fullmer was the contractor of a suite of commercial medical office units in Upland (the property), which plaintiff, a condominium association, now owns.

In granting defendants' motion for summary judgment, the trial court concluded plaintiff's lawsuit was time-barred under the 10-year limitations period in Code of Civil Procedure section 337.15 for latent construction defect actions. That provision prohibits filing a lawsuit against a developer or contractor for latent construction defects more than 10 years after whichever event occurs first—"substantial completion" of the allegedly defective project or "recordation of a valid notice of completion."[1] (Code Civ. Proc., § 337.15, subds. (a) & (g), unlabeled statutory citations refer to this code.) The trial court determined plaintiff's lawsuit was untimely because it was filed more than 10 years after MLD recorded a notice of completion for the property.

On appeal, plaintiff argues the trial court misinterpreted the terms "substantial completion" and "valid notice of completion" in section 337.15, and that, MLD, as the original owner of the property, is barred from raising the limitations period as a defense under the "owner exception" in section 337.15, subdivision (e). According to plaintiff, "substantial completion" occurs when the property can safely be used or occupied for its

_____

[1] Three events other than recordation—none relevant here—may also trigger the running of the statute of limitations. (§ 337.15, subd. (g).)

intended purpose, which they say didn't occur until almost a year after the notice of completion was recorded—when the property passed final inspection and the city issued a certificate of occupancy. Plaintiff argues the notice of completion is "invalid" within the meaning of the statute because it was recorded before those events.

We find plaintiff's arguments unpersuasive. First, their definition of "substantial completion" is not supported by the statute. Second, in any event, the statute lists recordation of a notice of completion as an event other than substantial completion which can trigger the limitations period. The controlling event is "whichever *first* occurs." (§ 337.15, subds. (a) & (g), italics added.) Thus, the Legislature envisioned a circumstance where the notice of completion is recorded before construction is complete and, in such cases, the statute is clear the recordation triggers the limitations period. Finally, plaintiff is wrong that the owner exception in section 337.15, subdivision (e) applies to MLD. The exception applies to the owner of the property at the time the defect "constitutes the proximate cause" of the injury alleged in the lawsuit, and plaintiff presented no evidence their claimed damages arose during the brief period MLD owned the property or the longer period MLD allegedly controlled plaintiff's board of directors. We therefore affirm.

# I

# FACTS

A. *The Complaint*

On January 19, 2018, plaintiff served defendants with a notice of commencement of legal proceedings. (Civ. Code, § 6870.) On February 28, 2018, plaintiff filed a complaint against defendants, asserting claims for negligence and breach of implied warranties and seeking damages in excess of $500,000. The complaint alleges the property suffered defects in its common areas relating to the exterior stucco, drywall, windows, subterranean wall, roof drain, and refrigerant and air conditioning components.

According to the complaint, MLD developed the property and was its original owner, and Fullmer was the general contractor responsible for its construction. MLD established a condominium association (plaintiff) in June 2008 to maintain and repair the property's common areas. The "Declaration of Covenants, Conditions and Restrictions for the Upland Medical and Dental Owners Association" (what plaintiff refers to as the "Condominium Declaration") requires the owners of the property's individual units to serve as members of the association. The owners have an undivided fractional fee interest in the property's common areas, in addition to holding fee title to their units. MLD owned the property for a brief time before transferring title to the association, and, according to the complaint, MLD controlled representatives on the association's board of directors for some unspecified period of time.

B.      *Summary Judgment*

MLD and Fullmer filed a motion for summary judgment, arguing the complaint was time-barred under the limitations period in section 337.15 because plaintiff commenced the litigation more than 10 years after the notice of completion was recorded. To support their motion, defendants submitted declarations from Fullmer's chief financial officer, Gered Yetter, and from James Fullmer (who was a member of MLD when it developed the property). Both witnesses said construction on the project concluded in late 2007. Defendants also submitted a copy of the notice of completion, which reflects that MLD recorded it with the San Bernardino County Recorder on December 7, 2007. The notice of completion identifies MLD as the owner of the property, describes the property as "One Wood & Steel Framed Two Story Medical Office," and says Fullmer completed construction on December 7, 2007.

Plaintiff opposed the motion, arguing there was a factual dispute over the date of "substantial completion" for purposes of triggering the 10-year limitations period. Plaintiff submitted emails between defendants and the city inspector regarding final inspection of the property; emails between defendants and the fire inspector; various correction notices issued after multiple final inspections; notes obtained from Upland's Department of Development Services indicating that the building passed final inspection on November 13, 2008; a certificate of occupancy for the property (which was issued by the city on November 13, 2008); and an aerial photograph from Google Earth of the construction site on October 22, 2007.

5

Plaintiff also submitted the declaration of Juan Coria, a licensed general contractor they had retained as a construction expert. Mr. Coria had reviewed all of the documents listed above in forming his opinions. Mr. Coria opined that the term "substantial completion" means "the stage of work is sufficiently complete that the owner can occupy or utilize the premises for its intended use." Based on this definition, Mr. Coria further opined that "the earliest possible date the building would have been substantially complete and be considered a safe structure to occupy and able to serve its intended purposes would have been November 13, 2008,"—that is, the date the city completed final inspection of the property and issued the certificate of occupancy. Finally, Mr. Coria said his office had confirmed with the office of the San Bernardino County Recorder that when it reviews a notice of completion it checks for completeness and a "verification signature by either the owner or an agent of the owner." In other words, the recorder's office does not inquire as to "whether the subject property has passed any inspections or has been certified to be occupied."

Plaintiff also argued that section 337.15, subdivision (e) prohibits any party in possession or control of the property at the time the defect caused actionable harm from asserting the limitations period as a defense. They argued there was a factual dispute over when MLD relinquished control of the property, and in support, submitted a grant deed recorded December 30, 2008, reflecting MLD's transfer of title to the property to plaintiff, the condominium association. They also submitted copies of the minutes of their annual members meetings for the years 2009 through 2013 to support their argument that

6

MLD "appointed and maintained control of [plaintiff's] board of directors from 2009 through January 2013." Finally, plaintiff asked for a continuance to depose two Fullmer employees "who were believed to be involved with the day-to-day construction of the [property]" in the event the court concluded that the evidence they had submitted was insufficient to create a triable issue of material fact regarding the date of "substantial completion."

After reviewing the parties' submissions and hearing oral argument, the trial court concluded the 10-year limitations period began on December 7, 2007, when MLD recorded the notice of completion, and because plaintiff commenced legal proceedings more than 10 years after that date (on January 19, 2018 at the earliest), the lawsuit was untimely. Relying on *A & B Painting & Drywall, Inc. v. Superior Court* (1994) 25 Cal.App.4th 349 (*A & B*), the court concluded that whether additional construction took place on the property after December 7, 2007 was immaterial because in this case the triggering event was the recorded notice, not "substantial completion" of construction. The court entered judgment in favor of defendants, and plaintiff timely appealed.

## II

## ANALYSIS

A. *General Principles and Standard of Review*

A trial court properly grants summary judgment when there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (§ 437c, subd. (c).) "The purpose of the law of summary judgment is to provide courts with a

7

mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).)

The standard of review for summary judgment is well established. A moving defendant bears the initial burden to show a cause of action has no merit by establishing that one or more elements of a cause of action cannot be established or that there is a complete defense. (§ 437c, subds. (a), (p)(2).) Once the defendant clears this hurdle, the burden shifts to the plaintiff to demonstrate a triable issue of material fact. (*Aguilar*, *supra*, 25 Cal.4th at pp. 850-851.) We independently review an order granting summary judgment, viewing the evidence in the light most favorable to the nonmoving party. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.)

B.       *Section 337.15's Special Limitations Period*

Section 337.15, which was enacted in 1971, provides that "[n]o action may be brought to recover damages" for a latent defect from any person who develops real property or performs the construction of any improvement to real property "more than 10 years after the *substantial completion* of the development." (§ 337.15, subd. (a), italics added.)

In 1981, the Legislature amended the statute to add subdivision (g) and provide further instruction on when the limitations period begins to run. (Stats. 1981, ch. 88, § 1.) The new subdivision directs that the limitations period "shall commence upon substantial completion of the improvement, *but not later than* the date of one of the following,

8

*whichever first occurs*: (1) The date of final inspection by the applicable public agency[;] (2) The date of recordation of a valid notice of completion[;] (3) The date of use or occupation of the improvement[; or] (4) One year after termination or cessation of work on the improvement." (§ 337.15, subd. (g), italics added.) Section 337.15 therefore specifies five different events which may trigger the limitations period—"substantial completion" of construction or any of the four other events listed above. The event that controls, or triggers commencement of the limitations period, is the one that occurs *first*. (§ 337.15, subd. (g); see also *Nelson v. Gorian & Associates, Inc.* (1998) 61 Cal.App.4th 93, 97 (*Nelson*) ["The trial court correctly ruled that the notice of completion date . . . did not control *if the improvement was substantially completed at an earlier date*" (italics added)].)

As the *Nelson* court explained, the four events listed in section 337.15, subdivision (g) "do not define substantial completion." (*Nelson*, *supra*, 61 Cal.App.4th at p. 96.) Rather, they are *alternatives* to substantial completion, and whichever event occurs first starts the 10-year period running.

In *Lantzy v. Centex Homes* (2003) 31 Cal.4th 363 (*Lantzy*), the California Supreme Court described section 337.15 as a "special limitations statute" whose purpose is to "protect contractors and other professionals and tradespeople in the construction industry from perpetual exposure to liability for their work." (*Lantzy*, at p. 374.) "The statute reflects a legitimate concern that 'expanding concepts of liability could imperil the construction industry unless a statute of limitations was enacted.' [Citation.] Such

9

concerns legitimately include the prohibitive cost of insurance against a perpetual and never ending risk." (*Ibid.*)

After reviewing the legislative history of section 337.15 and the state of the common law before the statute was enacted, the *Lantzy* court concluded the 10-year limitations period was intended to be "absolute." (*Lantzy*, *supra*, 31 Cal.4th at p. 366.) "[T]he Legislature, faced with a developing body of common law on the subject, carefully considered how to provide a fair time to discover construction defects, and to sue upon such defects if necessary, while still protecting a vital industry from the damaging consequences of indefinite liability exposure. For latent deficiencies, the lawmakers rejected shorter periods in favor of a limit in the upper range of those previously adopted by other jurisdictions. Moreover, by placing exemptions in the latent defect statute for personal injury, willful misconduct, and fraudulent concealment, the legislators demonstrated an intent to pick and choose the particular exceptions they wished to allow and those particular aspects of the prior case law they wished to embrace. The implication arises that except as stated, and for important policy reasons, the Legislature meant the generous 10-year period set forth in section 337.15 to be firm and final." (*Id.* at p. 377.)

Our high court also held the 10-year limitations period is not "subject to 'equitable tolling' while the defendant's promises or attempts to remedy a defect are pending." (*Lantzy*, *supra*, 31 Cal.4th at pp. 370, 373.) However, there are some limited exceptions to the statute's application. The statute does "not apply to actions based on willful

10

misconduct or fraudulent concealment." (§ 337.15, subd. (f).) And, under subdivision (e) of section 337.15, the statute of limitations may "not be asserted by way of defense by any person in actual possession or the control, as owner, tenant or otherwise, of such an improvement, at the time any deficiency in the improvement constitutes the proximate cause for which it is proposed to bring an action." (This is sometimes called the "owner exception," and we discuss plaintiff's claim as it applies to MLD in part II.E, *infra*.)

Finally, the limitations period in section 337.15 is "the *outside* limit" for an action against a contractor or developer for latent defects." (*A & B*, *supra*, 25 Cal.App.4th at p. 355.) "If a latent defect is discovered, an action must be filed within three years (§ 338) or four years (§ 337) of discovery, but in any event must be filed within ten years (§ 337.15) of substantial completion. . . . '[S]ection 337.15 imposes an absolute 10-year bar . . . regardless of discovery.'" (*Ibid.*)

## C. *Plaintiff Failed to Demonstrate a Triable Issue of Fact as to When the Limitations Period Began*

Plaintiff argues the trial court misinterpreted the phrases "substantial completion" and "valid notice of completion" in section 337.15 and, as a result, erroneously concluded they hadn't demonstrated a triable issue of material fact about when the limitations period began. According to plaintiff, a notice of completion is not "valid" under section 337.15, subdivision (g) if it is recorded before construction is "substantially complete," and that did not occur in this case until the property was certified for occupation by the city. We disagree with plaintiff's interpretation of the statute.

11

The first problem with their argument is it assumes that "substantial completion" is the only triggering event. But as we've seen, the statute is not set up that way. Instead, it lists four alternatives to substantial completion and says the limitations period commences upon whichever event occurs first. (§ 337.15, subd. (g).) In other words, the items in section 337.15, subdivision (g) are easily ascertainable events that may trigger the limitations period on their own, without proof the construction was substantially complete. (*Nelson*, *supra*, 61 Cal.App.4th at p. 96.) Put differently, the Legislature has determined that any of the listed events are sufficient stand-ins for substantial completion, and the one to occur first begins the limitations period. The events themselves support this interpretation, as at least two of them are not obviously tied to the status of construction. A building can be used or occupied before construction is complete (§ 337.15, subd. (g)(3)) and construction can terminate or pause before it's complete (§ 337.15, subd. (g)(4)).

*A & B*, the case the trial court relied on in granting defendants' motion for summary judgment, is instructive. There, the owner of a mall brought a construction defect action against two contractors 10 years and four months after the notice of completion for the project was recorded (in September 1982). The contractors filed motions for summary judgment on the ground the lawsuit was barred by the 10-year limitations period in section 337.15. (*A & B*, *supra*, 25 Cal.App.4th at p. 353.) In opposing the motions, the owner argued the contractors had continued to perform "substantial work" on the project "long after" the notice of completion was recorded. (*Id.*

12

at p. 356.) The owner submitted evidence of this later work "in the form of checks, invoices and proposal estimates" to "show that [the contractors'] work was not completed until well into 1983." (*Ibid.*) The appellate court concluded the trial court had properly sustained the contractors' objections to this evidence because, so long as it occurs before substantial completion of the project, "the notice of completion is the event that commences the 10-year statute of limitations," not substantial completion. (*Ibid.*)

The trial court found plaintiff's argument essentially identical to the argument rejected in *A & B*. That is, plaintiff was contending the notice of completion should not trigger the limitations period because Fullmer performed additional construction work after recordation in order to obtain final inspection approval and the certificate of occupancy. The court found *A & B* directly on point and dispositive. "The parties spend a lot of time in the moving and opposition papers talking about when the construction was actually complete. All of that is irrelevant. The notice of completion is what governs here." "[*A & B*,] that's this case. What's important here is that the party who filed the notice of completion was MLD [], which was the owner of the property at that time, designating Fullmer [] as the contractor. [¶] . . . [T]his notice of completion was an acknowledgment by the owner of the property that the work of improvement was complete. The owner filed that. [¶] Later on the owner transferred the property to the plaintiff but that notice of completion had already been recorded. So regardless of what was or was not happening out at the project—and by the way, I can't really tell from the evidence that was submitted what work was going on, if any, after that date. [¶] It doesn't

13

matter. It's irrelevant. Because the plaintiff purchased the property with notice that the improvements were done and notice of [completion] was already of record." The trial court's reasoning and conclusion is sound, and we see no reason to depart from the holding of *A & B*.

Plaintiff attempts to distinguish this case from *A & B* by arguing that, unlike the plaintiff in that case, they are making a textual argument about the interpretation of the phrase "date of recordation of a valid notice of completion" in section 337.15, subdivision (g). Plaintiff contends the Legislature's inclusion of the word "valid" means a notice of completion filed *before* construction is complete must be deemed *invalid* for purposes of triggering the limitations period. (§ 337.15, subd. (g).) We are not persuaded that is what the Legislature meant by "valid notice of completion." To interpret the term this way would mean the recording of a notice of completion could never be the event that occurs first under section 337.15, subdivision (g). It would, by definition, always occur after "substantial completion," and there would be no reason to list it as a separate triggering event. In our view, "valid," as used in this provision, refers to the document itself and the act of recordation, not the status of the underlying construction. In other words, to be valid, the notice of completion must be properly recorded in the correct county (so that any subsequent potential buyers can find it in the public record), refer to the correct property or improvement, and be recorded by the proper party (the current owner or the contractor or their agent). (See *Eden v. Van Tine* (1978) 83 Cal.App.3d 879,

14

885, fn. 6 ["It is the owner or his agent that files the notice, and [in doing so] his acceptance of the improvement is acknowledged"].)

As they did in the trial court, plaintiff relies on *Scott v. Summit Ridge Estates, Inc.* (1967) 251 Cal.App.2d 347 (*Scott*) as authority for their interpretation of the word "valid" in Code of Civil Procedure section 337.15, subdivision (g). But the trial court found *Scott* inapt, and we do too. That case involved former Civil Code section 1193.1, which established the limitations period for a contractor who performed work on a project and was not fully paid under their contract to file a mechanic's lien against the underlying property. The provision at issue stated that a contractor had 90 days from "completion" of their contract work to file the lien, unless the original owner of the property recorded a notice of completion "within 10 days *after the completion* of the [contractor's] work," in which case the limitations period was shortened to 60 days (from the recordation date). (*Scott*, at p. 357, italics added.) In *Scott*, the court held that the notice of completion the owner defendant had recorded did not shorten the plaintiff contractor's limitations period because the notice related to *a different contractor's* work on the property. (*Ibid.*) In so holding, the court observed that "[a] notice of completion filed by the owner before actual completion of the work of improvement is premature and does not limit the time within which claims of lien must be filed." (*Ibid.*)

Plaintiff seizes on this sentence and would have us apply it in the context of section 337.15. We decline to do so because unlike the mechanic's lien statute at issue in *Scott*, section 337.15 does not make "completion" of the work the triggering event, nor

15

does it state that the notice of completion must be filed "after" completion of the work. (See *Forsgren Associates, Inc. v. Pacific Golf Community Development LLC* (2010) 182 Cal.App.4th 135, 145-146 ["The purpose of a mechanic's lien is to secure payment to a person who benefits another's property, by giving the person a lien on the real property that has increased in value from the improvement. . . . To preserve a mechanic's lien, the lien claimant must record a claim of lien within certain time periods following *the completion or cessation of work*" (italics added)].) As one court has already explained, the statutory provision establishing the limitations period for mechanic's liens "does not define 'substantial completion'" for purposes of latent defect lawsuits and is therefore "inapposite to the proper construction of section 337.15, subdivisions (a) and (g)." (*Nelson*, *supra*, 61 Cal.App.4th at p. 98.)

Plaintiff points out that *Eden v. Van Tine*, *supra*, 83 Cal.App.3d 879 (*Eden*), a case involving section 337.15, cited *Scott* for the proposition that the notice of completion must be filed after completion of construction to trigger the limitations period. When *Eden* was decided, section 337.15 provided only that the limitations period commenced upon "substantial completion" of construction. Because that phrase was not defined, the plaintiffs in *Eden* argued the phrase meant "sale or delivery" of the property (which, in that case, was a single-family residence) to a buyer. (*Eden*, at p. 883.) The trial court concluded that "substantial completion" occurred when the notice of completion of the property was recorded (which occurred well before the plaintiffs' purchased the property), and the appellate court agreed, reasoning that defendants had provided no

16

evidence to suggest the notice of completion was filed before the substantial completion of construction. (*Id.* at p. 885.) In a footnote, the court cited *Scott* for the proposition that "[a] notice of completion filed before actual completion of the work of improvement is invalid." (*Eden*, at p. 885, fn. 6, citing *Scott*, *supra*, 251 Cal.App.2d at p. 357.)

The problem with relying on *Eden* for an interpretation of what "valid" means in section 377.15, subdivision (g) is the case "predates the enactment of section 337.15, subdivision (g)" in 1981. (*Nelson*, *supra*, 61 Cal.App.4th at p. 98.) Because "substantial completion" was the only triggering event in the version of section 337.15 in effect at the time, it makes sense to ensure that any notice of completion was filed at the same time as or after construction was substantially complete.

The second problem with plaintiff's argument is even if they were correct that a notice of completion's validity under section 337.15 depends on the status of construction, the definition of substantial completion they offered to the trial court is not supported by the statute or the case law. Plaintiff argued in their opposition that substantial completion means the property can be safely occupied. They also argued that didn't occur until November 13, 2008, when the city completed final inspection and issued a certificate of occupancy. The evidence they submitted to demonstrate a triable issue of material fact on this point was Mr. Coria's opinion about what substantial completion means, a copy of the November 13, 2008 certificate of occupancy for the property, and a series of computer printouts that appear to be inspection items and notes taken by the inspector. One of those computer printouts contains an entry for "Bldg Final

17

Building" and a corresponding approval date of November 13, 2008. Even if we assume this evidence shows the property was not cleared for occupancy by city regulators until the fall of 2008, nothing in the statute supports the interpretation that substantial completion does not occur until the property can be occupied. The statute does not define the term substantial completion, and the "date of use or occupancy" of the property is one of the events that can trigger the limitations period but, again, only if it occurs before the others.

Importantly, even if we assume a notice of completion is invalid if issued when any amount of construction work remains to be done, the expert opinion and evidence plaintiff presented to the trial court did not create a triable issue of material fact about whether additional construction in fact took place after December 7, 2007. The court had before it declarations from a Fullmer witness and an MLD witness saying that construction was complete by the end of 2007 and documents reflecting the building was certified for occupancy about a year later after multiple attempts at final inspection. But none of the documents plaintiff submitted suggest any additional construction in fact occurred between December 7, 2007 and November 13, 2008, when the certificate of occupancy was issued. The only evidence plaintiff submitted to show additional construction work occurred after December 7, 2007 was Mr. Coria's opinion that an aerial photograph of the construction site taken by satellite on October 22, 2007—46 days before the notice of completion was recorded—depicted an incomplete project. Based on the photograph, Mr. Coria compiled a list of 20 "tasks . . . still remaining to be

18

completed," which included "interior stairs and railing," "interior rough plumbing," and "interior doors and partitions." We have reviewed the copy of the aerial photo in the appellate record, and we note the only aspect of the project that is visible from the photograph is the roof and the parking lot. Given that Mr. Coria was not involved in the construction, we conclude his review of an aerial photograph taken almost two months before the notice of completion was recorded is too speculative a basis to support an opinion about the status of construction on the date of recordation. (See, e.g., *Doe v. Salesian Society* (2008) 159 Cal.App.4th 474, 481 [evidence submitted to support or oppose summary judgment must be based on more than "speculation, . . . guesswork, or mere possibilities"].)

We conclude the trial court properly determined the notice of completion triggered the limitations period.

D.      *Plaintiff Is Not Entitled to a Continuance*

Plaintiff argues the trial court erred in failing to rule on their request for a continuance to depose two additional witnesses from Fullmer who may know specific details regarding the timing of the construction work. In granting defendants' summary judgment motion, the court implicitly denied plaintiff's request. We conclude the court did not err, as the record shows plaintiff did not comply with the requirements of section 437c, subdivision (h) in requesting the continuance. (See, e.g., *Combs v. Skyriver Communications, Inc.* (2008) 159 Cal.App.4th 1242, 1270 (*Combs*) [affirming denial of continuance request on same ground].)

19

Section 437c, subdivision (h) requires a court to grant a continuance to a summary judgment hearing "[i]f it appears from the *affidavits* submitted in opposition . . . that facts essential to justify opposition may exist but cannot, *for reasons stated*, be presented." (Italics added.) When the party requesting a continuance does not satisfy these requirements, we review the trial court's denial of a continuance request for abuse of discretion. (*Combs*, *supra*, 159 Cal.App.4th at p. 1270.)

Here, plaintiff's counsel did not explain in their declaration why the additional depositions were essential to opposing defendants' motion or why they needed additional time to take them. (See *A & B*, *supra*, 25 Cal.App.4th at p. 357 [concluding a continuance was not warranted under § 437c, subd. (h) because plaintiff counsel's declaration stating he had not been able to take depositions did not describe "what efforts were made to take the necessary depositions or why they could not have been taken earlier"].) Instead, plaintiff simply argued in their opposition that they had only "just recently" taken the deposition of MLD's "Person Most Knowledgeable," Bryan Marshall, and he wasn't able to provide any specific information about the construction timeline.

In response, defendants' counsel submitted a declaration with their reply papers that provided the court with a sound basis for denying the continuance. Counsel explained that defendants had identified both of the Fullmer employees plaintiff wanted to depose in their special interrogatory responses as individuals who were "involved in the construction or supervision of construction" of the project and that one of them (James Fullmer) had even submitted a declaration in support of the motion for summary

20

judgment; that they had made Mr. Marshall available for a deposition months before plaintiff's opposition was due; and that it was *plaintiff* who asked to postpone Mr. Marshall's deposition to just before their opposition was due. Thus, the record reveals the relevant information about the two Fullmer employees was available to plaintiff months in advance of their deadline for opposing the summary judgment motion and that plaintiff was responsible for the late date of Mr. Marshall's deposition. On this record, the court could reasonably conclude a continuance was not warranted.

Procedural requirements aside, another ground for affirming the trial court's refusal to grant a continuance is that the information plaintiff seeks to discover from the additional depositions—whether Fullmer performed additional construction work after the notice of completion was recorded—is immaterial. (*Ace American Ins. Co. v. Walker* (2004) 121 Cal.App.4th 1017, 1025 [court did not abuse its discretion in denying request because "[t]he discovery for which [the plaintiff] sought a continuance was not essential to her opposition to the motion"].) The trial court followed the holding of *A & B* in concluding that additional construction work performed after the notice of completion would not affect the commencement of the limitations period, and, as we've stated, we see no reason to depart from that case.

E.     *The "Owner Exception" in Section 337.15, Subdivision (e) Does Not Apply to MLD*

Plaintiff argues the trial court erred by not applying section 337.15, subdivision (e) to MLD to prohibit it from raising the limitations period as a defense. That provision says: "The limitation prescribed by this section shall not be asserted by way of defense by

21

any person in actual possession or the control, as owner, tenant or otherwise, of such an improvement, at the time any deficiency in the improvement constitutes the proximate cause for which it is proposed to bring an action." (§ 337.15, subd. (e).) Plaintiff argues MLD was effectively the owner of the property from December 2008 (when it transferred title to plaintiff) to January 2013 because during that time MLD exercised "control and domination" of plaintiff's board of directors. We find plaintiff's argument unpersuasive.

As the court explained in *Eden*, the owner exception "prevents the person in possession or control of the premises *at the time a deficiency occurs* to escape liability by claiming it was caused by a latent defect traceable to the parties named in section 337.15, if more than 10 years have elapsed." (*Eden*, *supra*, 83 Cal.App.3d at pp. 885-886, italics added.) This provision is intended to deny current property owners (in this case plaintiff) from the protection of the limitations period. Defendants argue this provision would apply, for example, if a pipe leak at the property caused water damage to a vehicle in the parking lot 15 years after they had recorded the notice of completion. Section 337.15, subdivision (e) would prevent plaintiff, the current owner of the property, from asserting the 10-year limitations period, but MLD and Fullmer, as the developer and contractor, would be protected by the limitations period.

We agree with defendants. As the *Eden* court also explained, there is a good reason for treating current owners differently than builders and developers. "'A contractor is in the business of constructing improvements and must devote his capital to that end; the need to provide reserves against an uncertain liability extending indefinitely

22

into the future could seriously impinge upon the conduct of his enterprise.' On the other hand, one who owns the property or controls it at the time of the accident (i.e., *at the time the defect constitutes the proximate cause of the damage or injury*) is likely to have insurance." (*Eden*, *supra*, 83 Cal.App.3d at p. 886, quoting *Regents of University of California v. Hartford Acc. & Indem. Co.* (1978) 21 Cal.3d 624, 632, italics added.)

As an initial point, plaintiff has not provided any allegations or evidence as to when the alleged construction defects became the proximate cause of their claimed damages. The record contains the preliminary report of findings that plaintiff's consultant prepared and plaintiff submitted an opposition to summary judgment, but that report only notes the existence of property damage (such as water intrusion) and does not indicate when it occurred. However, plaintiff argues that the owner exception applies to MLD because the *defects* that allowed for the water intrusion to occur arose during construction, when MLD owned the property. We find *Gundogdu v. King Mai, Inc.* (2009) 171 Cal.App.4th 310 instructive on this point. In that case, the plaintiffs (the current owners of a single-family residence) argued that the developer should be prohibited from asserting the 10-year limitations period because the defects occurred during construction and the developer owned the property for 16 months after construction was complete. (*Id.* at pp. 314-315.) The court disagreed, concluding "such an interpretation of section 337.15 subdivision (e) would be contrary to the purpose of the statute." (*Id.* at p. 315.) "[P]laintiffs' complaint for construction defects is premised on [the developer's] conduct as the developer of the property, not on liability incurred as a

23

landowner. Absent any allegation that [the developer's] conduct following completion of the home *caused* plaintiffs' *damages*, there is no reason why [it] should be denied the protection that section 337.15 extends to developers." (*Ibid.*, italics added.)

Such is the case here. Plaintiff alleges the defects for which they seek damages occurred during construction. They do not allege that MLD's conduct as owner of the property (for the short period it owned the property before transferring it to plaintiff, as the condominium association), caused their damages. Nor do they allege that MLD caused their damages during the time it allegedly controlled plaintiff's board of directors. Like the plaintiffs' claims against the developer/owner in *Gundogdu*, plaintiff's claims against MLD "are premised on its liability for defects in the construction of [the property] that occurred more than 10 years ago." (*Gundogdu*, *supra*, 171 Cal.App.4th at p. 316.)

Finally, plaintiff argues that if the owner exception does not apply to MLD, the limitations period as to MLD should be tolled (or should not start to run) until MLD gave up its control over plaintiff's board of directors, in January 2013. This argument was also made and rejected in *Gundogdu*. The plaintiffs asserted the 10-year limitations period should not run during "that period of time [the developer] retained actual possession or control of the improvement." (*Gundogdu*, *supra*, 171 Cal.App.4th at p. 316.) The court found this argument "contrary to both the plain language of the statute and substantial case law," both of which make clear that the limitations period begins to run on the occurrence of any of the triggering events in section 337.15 regardless of when the property is finally sold to a purchaser. (*Ibid.*) The only authority plaintiff cites for their

24

tolling/delayed accrual argument is *El Escorial Owners' Assn. v. DLC Plastering, Inc.* (2007) 154 Cal.App.4th 1337, and that case has no bearing here because it involves the shorter limitations periods in sections 337 and 338 for patent defects (which accrue upon discovery) and a *tolling agreement* between the parties. (*El Escorial*, at pp. 1354-1357.) In contrast, the "generous" 10-year limitations period in section 337.15 is the *outside* limit for bringing an action and it applies regardless of discovery. (*Lantzy*, *supra*, 31 Cal.4th at p. 367 ["the extraordinary length of the limitations period set forth in section 337.15 weighs strongly against the need for . . . a tolling rule as a matter of fair procedure"].)

## III

## DISPOSITION

We affirm the judgment. Defendants shall recover their costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

SLOUGH _____
                                                                                          J.

We concur:

CODRINGTON _____
              Acting P. J.

FIELDS _____
                    J.

25