Filed 5/5/23  Thieriot v. Lusardi Construction CA1/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| ELISABETH THIERIOT,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>LUSARDI CONSTRUCTION CO.,<br><br>    Defendant and Respondent. | A164165<br><br>(Marin County Super. Ct. No. CIV1604500) |

Plaintiff and appellant Elisabeth Thieriot (Thieriot) contracted with defendant Lusardi Construction Company (Lusardi) to install over 100 new custom-designed and manufactured mahogany-framed windows and doors at her Tiburon residence.  Lusardi was not involved in either the design, purchase, or manufacture of the windows and doors.  The installation began in early 2009 and was completed by late 2009.  Almost immediately, Thieriot was aware the windows and doors did not work properly and were not weather tight.  Lusardi made attempts to rectify the situation, without success.  In late July 2012, Thieriot sent Lusardi and the manufacturer of the windows and doors an e-mail recapping the problems, complaining none of the repair efforts had solved them, and asserting a "permanent" solution was required which she asserted meant the windows and doors needed to be wholly "recut."

1

Four and a half years later, in December 2016, Thieriot filed the instant lawsuit. Lusardi moved for, and was granted, summary judgment on the ground the statutes of limitations had run on all causes of action.

On appeal, Thieriot maintains the trial court abused its discretion in denying her a second continuance to oppose the motion and erred as a matter of law in granting summary judgment. We affirm.

## BACKGROUND[1]

In 2008, Thieriot started a lengthy remodel of her Tiburon home, and contracted with Lusardi to install 117 new, custom designed and manufactured mahogany-framed windows and doors. Lusardi had no involvement in the design, purchase, or manufacturer of the windows and doors.

Lusardi commenced installation in early 2009 and completed its work in late 2009. It sent its final billing in February 2010.

Within months of completion, and at the latest by the spring of 2010, Thieriot was aware of water intrusion, wind and dust seepage, difficulties opening windows, warped astragals on the French Doors, and an uneven fit between the sash and the frames in many of the windows and doors.

Thieriot contacted Lusardi, and the contractor made efforts to correct the problems over the course of the next two years.

In late July 2012, Thieriot sent an e-mail to Lusardi and the window and door manufacturer, recapping the problems and complaining that for two years they had not been corrected. She stated "the time has come to fix what is broken," and that the failed repair efforts "only made it so very clear it

---

[1] We provide an overview of the facts and procedural history here and provide a more detailed discussion of the facts in connection with our discussion of the issues on appeal.

needs [a] permanent solution." She further asserted that to correct the problems, the windows and doors needed to be "recut . . . to fit the frames so then there will be a fit between them. The idea of filling the space with rubbers and other strips does not work."

The following year, in 2013, Thieriot retained an attorney. She also retained an expert who provided a report in mid-July addressing the problems Thieriot had identified. The expert did not identify any problem of which Thieriot was not already aware, nor did he pinpoint a specific cause of the problems.

In mid-December 2016—more than six and a half years after the spring of 2010, by which time Thieriot had become aware of problems with the windows and doors, and four and a half years after her July 2012 e-mail to Lusardi and the manufacturer recapping the problems, complaining about the failed repair efforts, and asserting the windows and doors need to be recut—Thieriot filed the instant lawsuit against Lusardi and three other contractors. Thieriot alleged Lusardi had not used reasonable care in installing the windows and doors, had actively concealed defects, and had overstated its ability to perform. She asserted causes of action for breach of contract, unfair competition, fraud, and negligent misrepresentation.

In late May 2021, Lusardi moved for summary judgment on the ground Thieriot's claims were barred by the statutes of limitations.[2]

---

[2] Lusardi alternatively moved for summary adjudication on the claims for unfair competition, fraud, and negligent misrepresentation on the ground Thieriot could not establish it had made any misrepresentation of fact, that it had knowledge of falsity or possessed an intent to defraud her. As we shall discuss, we need not, and do not, reach these issues.

Thieriot did not file timely opposition. Instead, eight days after the deadline to do so passed, she filed an *ex parte* application to continue the motion. In a declaration in support, Thieriot's attorney stated he had had an adverse reaction to a Covid-19 vaccination and was unable to prepare the opposition. The trial court granted the application and continued the hearing, giving Thieriot another four weeks to file opposition.

Thieriot again failed to file timely opposition. Four days after the new deadline, she filed opposing points and authorities, along with a declaration by counsel claiming good cause and a reasonable excuse for late filing (stating he had also had an adverse reaction to a second Covid-19 vaccination). The court accepted the filing.

In her points and authorities, Thieriot stated the depositions of Lusardi's two designated "Persons Most Knowledgeable" (PMK's) had just been completed and she did not yet have the transcripts, asserting the depositions were "necessary to defend against the motions of summary judgment . . . as to this point," "this point" referring to statements about Lusardi's construction experience. She also stated the deposition of the employee of another defendant who allegedly convinced her to hire Lusardi to do the installation work had not yet been taken but was scheduled, and that deposition was "also necessary to help establish the facts on which the specific complaint relies." In the final paragraph of her declaration in opposition to the motion, Thieriot asked to continue the motion under Code of Civil Procedure section 437c, subdivision (h) "[if] the court does not find that this matter should proceed based upon the evidence already presented."

In reply, Lusardi stated it had offered to make its two PMKs available for deposition months earlier, in mid-July. But Thieriot's attorney made no effort to schedule the depositions before the initial due date for her

4

opposition.  After obtaining the extension to file opposition, counsel did not take the depositions until less than a week before the new due date.  Nor had counsel asked Lusardi's attorney to agree to use of the rough transcripts or asked the court reporters for expedited transcripts.

During the hearing, after he presented argument, Thieriot's counsel apparently lost his Zoom connection, so the trial court continued the matter to the following week.  Counsel did not appear at the continued hearing, but all other counsel did.  At the conclusion of the hearing, the trial court denied a further continuance under Code of Civil Procedure section 437c, subdivision (h), adopted its tentative decision, and granted Lusardi's motion for summary judgment.

## DISCUSSION

### *The Request for Continuance*

Thieriot maintains the trial court erred in denying her request to continue the summary judgment motion to enable her to obtain deposition transcripts she claims show there are triable issues that preclude summary judgement.

Code of Civil Procedure section 437c, subdivision (h) provides: "If it appears from the affidavits submitted in opposition to a motion for summary judgment or summary adjudication, or both, that facts essential to justify opposition may exist but cannot, for reasons stated, be presented, the court shall deny the motion, order a continuance to permit affidavits to be obtained or discovery to be had, or make any other order as may be just.  The application to continue the motion to obtain necessary discovery may also be

5

made by ex parte motion at any time on or before the date the opposition response to the motion is due."[3]

As the statute reflects, "[t]o mitigate summary judgment's harshness, the statute's drafters included a provision making continuances—which are normally a matter within the broad discretion of trial courts—virtually mandated ' "upon a good faith showing by affidavit that a continuance is needed to obtain facts essential to justify opposition to the motion." ' " (*Bahl v. Bank of America* (2001) 89 Cal.App.4th 389, 395 (*Bahl*); see *Braganza v. Albertson's LLC* (2021) 67 Cal.App.5th 144, 152 (*Braganza*).) Thus, "[c]ontinuance requests under section 437c, subdivision (h), are to be liberally granted. [Citations.] '[T]he interests at stake are too high to sanction the denial of [such] a continuance [request] without good reason.' [Citation.] These interests include the importance of deciding cases on their merits rather than on procedural deficiencies." (*Braganza*, at p. 152.)

However, a continuance is not guaranteed. The purpose of the required affidavits or declarations is to enlighten the court as to what outstanding discovery is necessary to oppose summary judgment. (*Chavez v. 24 Hour Fitness USA, Inc.* (2015) 238 Cal.App.4th 632, 643.) "[I]t 'is not sufficient under the statute merely to indicate further discovery or investigation is contemplated. The statute makes it a condition that the party moving for a continuance show "facts essential to justify opposition may exist." ' " (*Bahl, supra,* 89 Cal.App.4th at p. 397.) "The affidavit is required to show that ' "(1) the facts to be obtained are essential to opposing the motion; (2) there is reason to believe such facts may exist; and (3) the reasons why additional

---

[3] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

6

time is needed to obtain [or discover] these facts." ' " (*Braganza, supra,* 67 Cal.App.5th at p. 153.)

There has been "a split of opinion among the California appellate courts 'as to the effect of the absence of [] an explanation' of why discovery was not completed sooner, when a party seeks a continuance under section 437c, subdivision (h). [Citation.] That split of authority continues to this day." (*Braganza, supra,* 67 Cal.App.5th at p. 155.)

In *Bahl*, for example, the court stated, "when a party submits an affidavit demonstrating that facts essential to justify opposition may exist but have not been presented to the court because the party has not been diligent in searching for the facts through discovery, the court's discretion to deny a continuance is strictly limited." (*Bahl, supra,* 89 Cal.App.4th at p. 398; accord, *Frazee v. Seely* (2002) 95 Cal.App.4th 627, 635.) In *Braganza*, however, the court stated, " '[t]here must be a justifiable reason why the essential facts cannot be presented. An inappropriate delay in seeking to obtain the facts may not be a valid reason why the facts cannot then be presented. The statute itself authorizes the imposition of sanctions for declarations presented in bad faith or solely for purposes of delay. (§ 437c, subd. (j).) A good faith showing that further discovery is needed to oppose summary judgement requires some justification for why such discovery could not have been completed sooner.' " (*Braganza, supra,* 67 Cal.App.5th at p. 156, quoting *Cooksey v. Alexakis* (2004) 123 Cal.App.4th 246, 257.)

We need not choose sides on this issue, however, as the trial court not only denied Thieriot's request for a continuance because she "repeatedly failed to abide by statutory and court deadlines" and "the continued delay [was] inexcusable," but also because she made no showing, in either her points and authorities or her own declaration, how the deposition testimony

7

"would be material to this dispute," i.e., to the grounds on which Lusardi sought summary judgment.

In her opening brief, Thieriot asserts the deposition transcript of PMK Dale Macy "would provide material facts that the problems with the construction occurred into 2015." She claims this "was verbally stated during the . . . hearing . . . by . . . counsel," and she "noted this throughout her declaration." She further maintains in her opening brief that this evidence "was critical to establish that a genuine question of material fact remained regarding whether the statutes of limitations had been tolled in 2015 when [she] was continuing to remedy the problems with the doors and windows."

However, Thieriot did not need any PMK deposition transcript to establish that the problems with the windows and doors remained unresolved as of 2015. She, herself, had personal knowledge of the assertedly persisting problems with the windows and doors, as well as knowledge of any other facts that purportedly supported her claim that the limitations periods were tolled. Indeed, she alleged in her verified complaint that in December 2015 a large storm occurred that damaged one of the sets of French doors and she discovered at that time that the frames appeared not to have been made of solid mahogany but of a mixture of woods wrapped with mahogany cladding. She further averred in her declaration, dated "9/2021," that the problems remained, and she still did "not have a safe house."

Moreover, in the trial court, which is the critical venue for evaluating a request for a continuance under section 437c, subdivision (h), she did not make the argument she has now advanced on appeal. As we have recited, all she provided to the trial court were generic claims of asserted need for further discovery devoid of any specific explanation as to why the deposition transcripts were "essential" to opposing Lusardi's motion.

8

In short, Thieriot made no showing in the trial court, and has made none on appeal, that the PMK deposition transcripts established facts "essential to justify opposition" which could not "be presented" in the absence of a continuance. For this reason, alone, the trial court did not abuse its discretion in denying Thieriot's request to continue the summary judgment motion so she could obtain transcripts of the PMK depositions.

***The Statutes of Limitations***

Thieriot also challenges the trial court's grant of summary judgment.

Generally speaking, we review de novo the trial court's grant of summary judgment. (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347.)

However, the only argument Thieriot has advanced in her appellate briefing is that she "set forth all the facts needed to establish a tolling argument" and the trial court erred in not ruling "the applicable statute of limitations was tolled" for a sufficient period of time to save her claims. In other words, Thieriot does *not* take issue with the trial court's ruling that her claims are untimely under the "discovery rule" of accrual that applies to her claims.[4] (See *Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 369–370

---

[4] While Lusardi identified the differing limitations periods for breach of contract (four years) and for unfair competition, fraud, and negligent misrepresentation (three years), its discussion of accrual under the delayed discovery rule is applicable to all of the claims. Thieriot follows suit on appeal, collectively arguing she raised a triable issue as to "tolling" the applicable limitations periods. At oral argument, Thieriot's attorney suggested the 10-year statute of limitations for latent construction defects set forth in section 337.15 applied. However, this was never urged in the trial court, and in her opening brief on appeal, Thieriot states, "The statute of limitations on Appellant's breach of contract and unfair competition causes of action were four years. . . ."

(*Lantzy*) [discussing limitations periods and discovery rule applicable to "construction defect" claims]; *Brisbane Lodging, L.P. v. Webcor Builders, Inc.* (2013) 216 Cal.App.4th 1249, 1257–1258 [same]; *E-Fab, Inc. v. Accountants, Inc. Services* (2007) 153 Cal.App.4th 1308, 1316, 1318 [discussing limitations periods and discovery rule for negligent misrepresentation and fraud].) Rather, she claims only that the court should have ruled the applicable limitations periods were "tolled" for a sufficient period of time to render her claims timely.[5]

The appellate courts have articulated differing standards of review when it comes to equitable tolling. In *Thomas v. Gilliland* (2002) 95 Cal.App.4th 427, 430, 434 (*Thomas*), in upholding a dismissal following a demurrer based on limitations grounds, a ruling that usually is reviewed de novo, the court stated that a ruling applying or refusing to apply the doctrine of equitable tolling is "accord[ed] [] a different standard of review. Equitable tolling is a fact intensive issue and it is determined based upon evidence. Accordingly, we are compelled to affirm the trial court's rejection of the theory if there is substantial evidence to support its determination." In *Mills v. Forestex Co.* (2003) 108 Cal.App.4th 625, 639–640 (*Mills*), in affirming a summary judgment based on limitations grounds and rejecting equitable tolling, the court stated, "we review the decision for abuse of discretion when the court granted or denied a motion for summary judgment in the exercise of its equitable powers." In *Hopkins v. Kedzierski* (2014) 225 Cal.App.4th 736, 748, in reversing a judgment on limitations grounds following a bench trial,

---

[5] We also note the doctrine of equitable tolling differs from equitable estoppel (*Lantzy, supra,* 31 Cal.4th at p. 383 ["Equitable tolling and equitable estoppel are distinct doctrines."]), and Thieriot's briefing is confined to the doctrine of equitable tolling.

the appellate court stated, "[w]hether the trial court provided legally sufficient reasons for determining that the doctrine of equitable [tolling] does not apply in this case presents a question of law that we review de novo." (See *Saint Francis Memorial Hospital v. State Dept. of Public Health* (2020) 9 Cal.5th 710, 730 (*Saint Francis*) [remanding to the court of appeal to determine whether the petitioner's "conduct was reasonable and in good faith" and thus supported equitable tolling, suggesting the issue is a legal one, at least on undisputed facts, that can be decided by an appellate court in the first instance].)  Given that the operative facts here are undisputed, we shall apply the de novo standard articulated in *Hopkins* and implicitly endorsed in *Saint Francis*.

At the end of the summary judgment hearing, the trial court ruled on Thieriot's equitable tolling argument and explained at considerable length why it was rejecting it.

First, Thieriot did not make a tolling argument in her written opposition to Lusardi's motion, but raised the issue for the first time at the hearing on the motion in opposing the court's tentative ruling.  The court stated it generally will not consider arguments not raised in opposing papers. Second, Thieriot did not allege equitable tolling in her second amended complaint, even though she had the burden of pleading and proving that her otherwise time-barred claims could proceed.  (See *Thomas, supra,* 95 Cal.App.4th at p. 433 [complaint contained no allegations supporting claim that equitable tolling applied].)  In short, the trial court ruled that two procedural hurdles seemingly barred Thieriot's belatedly raised tolling argument.

11

The court's third reason for rejecting Thieriot's tolling argument went to the merits.[6] The court correctly recited that "[t]he doctrine of equitable tolling requires timely notice, lack of prejudice, and reasonable good faith conduct on the part of the plaintiff," and concluded none of these elements "are presented by the facts here." (See *Saint Francis, supra,* 9 Cal.5th at p. 724 [equitable tolling applies when three " 'elements' " are present: " '[(1)] timely notice, and [(2)] lack of prejudice, to the defendant, and [(3)] reasonable and good faith conduct on the part of the plaintiff' "].)

The court then pointed out the windows and doors "were installed in late 2009" and "plaintiff by her own admission was aware of problems in early 2010." Thus, under the discovery rule, Theriot's claims accrued at that time—a ruling, as we have observed, with which Theriot does not take issue on appeal. The trial court went on to state "[t]here is no general rule that the statute is tolled during repairs, subsequent repairs. That's the California Supreme Court's decision in *Lantzy*. . . . [Furthermore,] [b]ased on the record before the Court, if there were any periods subject to tolling, the latest the accrual could be tolled for repairs would be July of 2012. At which point, the documented records showed that they were working on matters, did not believe there was more that could be done to resolve the problems identified. Even if the Court accrues the statute to that point, the claims would still be untimely."

Thus, the trial court did not categorically refuse to apply the equitable tolling doctrine. While it identified two procedural problems in considering the doctrine—Theiriot's failure to raise equitable tolling in her written

---

[6] We therefore overlook the apparent procedural problems with Thieriot's tolling argument. (See *Thomas, supra,* 95 Cal.App.4th at p. 433.)

12

opposition to Lusardi's motion and failure to plead the doctrine in her second amended complaint—it went on to consider the merits of her claim that tolling rendered her claims timely. The court concluded that even assuming equitable tolling can apply to a period during which repairs are attempted, in *this* case any tolling ceased as of July 2012, because at that point, it was clear to Thieriot that Lusardi's efforts had not and would not solve the problems with the windows and doors and an entirely different approach was required.

Accordingly, the tolling issue before us is a limited one—did the trial court err in not tolling the limitations periods beyond July 2012.

Theiriot's principal argument as to why the trial court assertedly erred is based on the fact problems with the windows and doors "continued in 2015." In support of this argument, she relies on a number of older cases in which limitations periods were tolled during the time defendants were attempting to make repairs.

Our Supreme Court discussed this line of cases in *Lantzy, rejecting* the plaintiffs' assertion "that in construction defect cases, the rule of tolling for repairs is well established." (*Lantzy, supra,* 31 Cal.4th at p. 372.) The high court explained: "[T]wo Court of Appeal decisions, *Grange Debris* [*Box & Wrecking Co. v. Superior Court* (1993)] 16 Cal.App.4th 1349, 1360 and *Cascade Gardens* [*Homeowners Assn. v. McKellar Associates* (1987)] 194 Cal.App.3d 1252, 1256–1258, have concluded that the 10–year limitations period of section 337.15 is tolled while the defendant's promises or attempts to remedy the defect are pending. For this holding, *Grange Debris* relied solely on *Cascade Gardens. Cascade Gardens,* in turn, invoked the 'clear authority' of several earlier decisions, *Aced v. Hobbs–Sesack Plumbing Co.* (1961) 55 Cal.2d 573, 585 . . . (*Aced*), *Mack v. Hugh W. Comstock Associates* (1964) 225 Cal.App.2d 583, 589 . . . (*Mack*), and *Southern Cal.*

13

*Enterprises v. Walter & Co.* (1947) 78 Cal.App.2d 750, 755 . . . (*Southern Cal. Enterprises*). (*Cascade Gardens, supra,* at p. 1256.) [¶] But *Aced, Mack,* and *Southern Cal. Enterprises* are inapposite to the question before us. They predate the 1971 adoption of section 337.15, and were narrowly concerned with how to apply the limitations period for express or implied warranties. These cases simply confirmed that the statute of limitations for breach of warranty does not begin to run until discovery of the defect, and is thereafter tolled during periods the warrantor claims he can honor the warranty by repairing the defect, and attempts to do so. (*Aced, supra,* 55 Cal.2d 573, 577, 585 [radiant heating system; plaintiff stipulated he was relying solely on a theory of implied warranty]; *Mack, supra,* 225 Cal.App.2d 583, 585, 589 [radiant heating system; plaintiff alleged breach of express warranty]; *Southern Cal. Enterprises, supra,* 78 Cal.App.2d 750, 752–753, 755 [installed carpet; plaintiff alleged breach of express warranty].)" (*Lantzy,* at p. 372.)

The Supreme Court went on to hold that neither the structure nor the purpose of the outside 10-year limitations period for construction defect claims set forth in section 337.15 justifies use of equitable tolling to extend that lengthy period. (*Lantzy, supra,* 31 Cal.4th at pp. 373–374.)

In doing so, the court considered the plaintiffs' arguments that equitable tolling for repairs "protects homeowners from unscrupulous builders who might otherwise make false promises or 'band-aid' repairs in order to forestall suit until after the 10–year period had passed" and "encourages resolution of construction defect disputes without resort to the courts." (*Lantzy, supra,* 31 Cal.4th at p. 382.) The court rejected these arguments, stating "a tolling rule seems just as likely to *discourage* a potential defendant from undertaking voluntary remedial efforts before the limitations period expires. If his efforts failed, he would only have prolonged

14

the already lengthy period during which he was exposed to suit. [¶] Moreover, if a plaintiff can show, in a particular case, that the defendant's promises or attempts to repair prevented a timely suit, the defendant may be equitably *estopped* from invoking the protection of the statute of limitations. . . . Thus, an automatic rule of equitable *tolling* is not necessary to counteract fraudulent assurances of repair." (*Id.* at pp. 382–383, fn. omitted.)

Thus, our Supreme Court has either squarely overruled or distinguished the cases on which Thieriot has predicated her equitable tolling argument.

In any case, as we have discussed, the trial court did not categorically reject Thieriot's tolling argument. Rather, the court ruled that even assuming the limitations periods can be tolled while a contractor attempts repairs, in *this* case, any tolling beyond her July 25, 2012 e-mail was not reasonable.

In *Saint Francis*, our Supreme Court explained that the third element required for equitable tolling—"reasonable and good faith conduct on the part of the plaintiff"—"encompass[es] two distinct requirements: A plaintiff's conduct must be objectively reasonable and subjectively in good faith." (*Saint Francis*, *supra*, 9 Cal.5th at pp. 728–729.) "When it comes to reasonableness, the 'ultimate test' is 'objective.' [Citation.] An analysis of reasonableness focuses not on a party's intentions or the motives behind a party's actions, but instead on whether that party's actions were fair, proper, and sensible in light of the circumstances." (*Id.* at p. 729.) The subjective component focuses on the party's intentions, that is, whether the "late filing . . . was the result of an honest mistake or was instead motivated by a dishonest purpose." (*Ibid.*) "Construing equitable tolling's third element to contain an objective and subjective requirement fits the doctrine's underlying rationales. Equitable

15

tolling applies only 'in carefully considered situations to prevent the unjust technical forfeiture of causes of action.' " (*Ibid.,* quoting *Lantzy, supra,* 31 Cal.4th at p. 370.)

We have no difficulty agreeing with the trial court that after two years of repair efforts that Thieriot, herself, pronounced were unavailing and needed to be abandoned in favor of a different approach, it was no longer objectively reasonable for her to continue to sit on her legal rights after her July 25, 2012, e-mail.

Given this conclusion, Thieriot's secondary tolling argument—that she did not retain counsel until 2013 and did not procure an expert report until July 2013—is immaterial. Her delay in both retaining counsel and procuring an expert report was not objectively reasonable.

Furthermore, in asserting the 2013 expert report is significant, Thieriot appears to be confusing the concepts of equitable tolling and accrual under the discovery rule. As we have pointed out, Thieriot has not taken issue with the trial court's ruling that her claims are time-barred under the discovery rule, but only with its ruling that the running of the limitations period was not tolled for a sufficient length of time to render her claims timely. Even under the discovery rule, however, an expert's report is not the triggering event for limitations purposes where, as here, the plaintiff knew or reasonably should have known earlier of her injury and its suspected causes. (*Knowles v. Superior Court* (2004) 118 Cal.App.4th 1290, 1300 ["It is a plaintiff's *suspicion* of negligence, rather than an expert's *opinion,* that triggers the limitation period."].)

As has often been recited, under the discovery rule, the limitations period begins once the plaintiff " ' " ' "has notice or information of circumstances to put a reasonable person on inquiry. . . ." ' " [Citations.] A

16

plaintiff need not be aware of the specific "facts" necessary to establish the claim; that is a process contemplated by pretrial discovery. Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the plaintiff must go find the facts; she cannot wait for the facts to find her.' " (*Mills, supra,* 108 Cal.App.4th at p. 43.) There is no doubt that by July 25, 2012, Thieriot had ample suspicion of wrongdoing. Indeed, she had ample suspicion of wrongdoing within months of the conclusion of the installation work, as she was complaining about an assortment of problems with the windows and doors by the spring of 2010.

In sum, the trial court did not err in concluding the applicable limitations periods were not tolled beyond July 2012 and therefore her December 2016 complaint was untimely as to all her causes of action.[7]

## DISPOSITION

The judgment is affirmed. Costs on appeal to respondent.

---

[7] We therefore need not, and do not, address Thieriot's argument that in addition to erroneously ruling that her fraud and misrepresentation claims were time barred, the court also erred in ruling her claims failed on the merits.

_____
Banke, J.

We concur:


_____
Margulies, Acting P.J.


_____
Swope, J.*








**Judge of the San Mateo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.




A164165, Thieriot v. Lusardi Construction Company


18